No.  89-589

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

THE ASSOCIATED PRESS, BILLINGS GAZETTE, HELENA
INDEPENDENT RECORD, MISSOULA MISSOULIAN, GREAT FALLS
TRIBUNE, KALISPELL DAILY INTERLAKE, BOZEMAN DAILY
CHRONICLE, HAVRE DAILY NEWS, LIVINGSTON ENTERPRISE,
MILES CITY STAR, BUTTE MONTANA STANDARD, HAMILTON
RAVALLI REPUBLIC, MONTANA NEWSPAPER ASSOCIATION,
MONTANA CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS,
                        Plaintiffs and Respondents,
        -v-

THE BOARD OF PUBLIC EDUCATION,
                        Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:
          Marc Racicot, Attorney General, Helena, Montana
          Kim Kradolfer; Agency Legal Services Bureau; Helena,
          Montana (argued)
     For Respondents:
          James P. Reynolds; Reynolds, Molt & Sherwood; Helena,
          Montana (argued)
          Peter Michael Meloy; Meloy Law Firm; Helena, Montana
     Amicus:
          Bruce Moerer; Montana School Boards Assoc; Helena,
          Montana
          Stephen F. Garrison; Dept. of Highways, Helena, Montana
          Dal Smilie; Dept. of Admin.; Helena, Montana
          Martin Jacobsen; Public Service Com.; Helena, Montana
          Timothy J. Meloy; Dept. of Agriculture; Helena, Montana
          David J. Patterson, Montana Assoc. of Counties; Missoula,
          Montana
          Annie M. Bartos; Dept. of Commerce; Helena, Montana
          James R. Beck; Dept. of Highways; Helena, Montana
          David A. Scott; Dept. of Labor & Industry; Helena,
          Montana
          John F. North; Dept. of State Lands; Helena, Montana
          Donald D. MacIntyre; Dept. of Natural Resources and
          Conservation; Helena, Montana
          Brad Belke, Butte, Montana (for common cause)
          G. Steven Brown; Helena, Montana (for Mt. School Boards
          Association)
          John P. Poston; Helena, Montana (for Reporters Committee
          for Freedom of the Press)
          Jeffrey T. Renz; American Civil Liberties Union of
          Montana; Billings, Montana
          Jim Madden; Reserved Water Rights Compact Comm.; Helena,
          Montana

FILED

JAN 4 - 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Filed:

Submitted:   November 27, 1990
Decided:     January 4, 1991

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.0

Defendant, the Board of Public Education, appeals from an order granting summary judgment in favor of plaintiffs, the Associated Press and its member organizations. The District Court of the First Judicial District, Lewis and Clark County, held that the litigation exception contained in § 2-3-203(4), MCA, which allows public agencies to close meetings when discussing litigation strategy, is unconstitutional because it violates Article II, Section 9 of the Montana Constitution. We affirm.

We frame the issues as follows:

1. Whether the Board of Public Education can, under the authority of § 2-3-203(4), MCA, validly close a meeting and exclude members of the public, in order to hold a private discussion concerning litigation strategy in a lawsuit to be asserted against the Governor;

2. Whether the District Court erred in awarding attorney fees to plaintiffs, Associated Press, et al.

Because the District Court decided this case on cross motions for summary judgment, the facts are not in controversy.

The Board of Public Education (Board) is created by Article X, Section 9(3) of the Montana Constitution. Its primary purpose is to exercise general supervision over the public school system and other public educational institutions. The plaintiffs in this case, include the Associated Press and its member news organizations, the Montana Newspaper Association and the Montana Chapter of the Society of Professional Journalists. On February

8, 1989, the Board convened a meeting to consider a court challenge to an Executive Order, which required that the Board's administrative rules be submitted to the Governor for review and approval. The meeting took place in Claudette Morton's office, who is the Board's executive secretary. Attending in person were Morton, Board Chairperson Alan Nicholson, Morton's administrative assistant Patricia Admire and attorney W. William Leaphart. Six other Board members participated by speaker phone. Associated Press reporter Faith Conroy and Marilyn Miller, an employee of the Governor's Office of Budget and Program Planning were also present in Morton's office.

Following roll call, the Board voted to close the meeting to discuss strategy to be followed with respect to potential litigation regarding the Governor's order. As a result of this vote, Faith Conroy was required, over her protest, to leave the room while this discussion took place. Marilyn Miller and Patricia Admire were also excluded from the closed portion of the meeting. The meeting was closed for approximately one-half hour.

When the meeting was reopened Conroy, Miller and Admire were allowed to reenter the room. At this point, the Board unanimously passed a motion calling for a court challenge to the Governor's order.

The next day the plaintiffs filed a complaint in District Court alleging that the Board met by telephone conference call and had closed its meeting to discuss litigation strategy. They maintained that the Montana Constitution does not authorize any

public body or agency to close its meetings, even when the meeting is called for the sole purpose of discussing litigation strategy. They therefore asked the District Court to declare § 2-3-203(4), MCA, unconstitutionally over broad and in conflict with Article II, Section 9 of the Montana Constitution. They further requested that the actions taken in the meeting be declared void and for it to award them attorney fees and costs.

The parties stipulated to a statement of facts for purposes of cross motions for summary judgment. The matter was briefed and argued, and on August 4, 1989 the District Court entered summary judgment in favor of the plaintiffs, declaring § 2-3-203(4), MCA, unconstitutional. This appeal followed.

I

We hold that the issue presented by this case is narrow. Simply put, this case requires us to determine whether the citizens of the State of Montana have an absolute constitutional right to attend and observe a meeting held by a public body or state agency which is held to discuss litigation strategy to be used in potential litigation against another state governmental entity. The two legal provisions which are pertinent to our decision are:

Article II, Section 9 of the Montana Constitution which states:

> Section 9. Right to know. No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

and § 2-3-203, MCA, which states in pertinent part:

4

2-3-203. Meetings of public agencies and certain associates of public agencies to be open to public--exceptions. (1) all meetings of public or governmental bodies, boards, bureaus, commissions, agencies of the state, or any political subdivision of the state or organizations or agencies supported in whole or in part by public funds or expending public funds must be open to the public.

* * *

(4) However, a meeting may be closed to discuss a strategy to be followed with respect to collective bargaining or litigation when an open meeting would have a detrimental effect on the bargaining or litigating position of the public agency.

The Associated Press maintains that Article II, Section 9 is clear on its face. Its wording succinctly mandates that all meetings of public bodies and state agencies must be open to the public unless "the demand of individual privacy clearly exceeds the merits of public disclosure." Therefore, the Associated Press argues § 2-3-203(4), MCA, which purportedly allows a public agency to privately discuss litigation strategy, is violative of this constitutional mandate and must be struck down as unconstitutional.

The Board, on the other hand, argues that this Court should balance other constitutional principles against the public's right to know. It maintains that the public, who is the true party in interest, has a right to due process which exceeds its right to know. The Board further argues that inherent in the right to due process is the right to confidentially confer with counsel. If state government is forced to open its meetings and publicly discuss litigation strategy, the right to speak to its attorneys in confidence will necessarily be lost. If this right is lost, state agencies, and consequently the public, will no longer retain

5

their right to due process.

The premise underlying the Board's argument is unsound. State agencies have never been included under the umbrella of the right to due process. The protections guaranteed by the constitutional right to due process were designed to protect people from governmental abuses. They were not designed to protect the government from the people. See State v. Katzenbach (1966), 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769. This Court has generally followed this line of reasoning and has held that due process does not embrace the state or its political subdivisions. See Fitzpatrick v. State Board of Examiners (1937), 105 Mont. 234, 70 P.2d 285. Because the Board's underlying premise fails, its argument based upon due process also fails.

As further rationale, the Board argues that under Article VII, Section 2(3), this Court retains sole constitutional authority to make rules governing the conduct of members of the bar. Under this grant of authority, this Court has adopted rule 1.6 of the Rules of Professional Conduct which provides:

> A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation. . .

Taking this argument further, the Board correctly maintains that this rule applies to all attorneys, including those employed by state agencies. Therefore, the argument goes, Rule 1.6 prevents them from discussing matters in public with their public agency clients.

This argument fails for at least two reasons. First and

foremost, is the realization that the Constitution is the supreme law of this State. Its mandate must be followed by each of the three branches of government. Therefore, while this Court is authorized to adopt rules governing the practice of law, it may not enact any rule which violates express guarantees contained in the Constitution. The interpretation of such rules is limited by the confines of the Constitution.

Second, we note that while an attorney must protect the confidences of his client, he is also directed to act within the law. As such this provision supersedes Rule 1.6, relative to public boards or agencies.

Next, the Board argues that both the constitutional history of Article II, Section 9 and applicable law from other states provide compelling reasoning which mandates reversal of the District Court's order. However, we have noted that this provision is unique, clear and unequivocal. Therefore as in the past we refuse to resort to law from other forums in interpreting our own Constitution. See e.g. Yellowstone Pipeline Co. v. State Board of Equalization (1960), 138 Mont. 603, 358 P.2d 55.

The language of Article II, Section 9 is clear as applied to this case. We are precluded, by general principles of constitutional construction, from resorting to extrinsic methods of interpretation. As we stated in a prior case:

> The language of [Article II, Section 9] speaks for itself. It applies to all persons and all public bodies of the state and its subdivisions without exception. Under such circumstances, it is our duty to interpret the intent of the framers from the language of the provision alone and not to resort to extrinsic aids or rules of

7

construction in determining the intent of the delegates to the Constitutional Convention.

Great Falls Tribune v. District Court (1980), 186 Mont. 433, 437-38, 608 P.2d 116, 119.

Applying the language of the provision to the agreed facts of this case we conclude that the Board wrongfully closed its meeting, which was held to discuss potential litigation between two governmental entities, in violation of the State Constitution.

The Board argues however, that public policy considerations mandate closure of meetings convened for the sole purpose of discussing litigation strategy. It maintains that if the State is required to open its meetings it will be severely disadvantaged in litigation against private parties because it will be forced to reveal all strategy to the opposing party. The opposition on the other hand will not be under such constraints and therefore litigation involving the State will not be played on a level field.

However, this argument really doesn't apply to the facts of this case. The potential litigation in this case involved a dispute over rule making authority between the Governor and the Board of Public Education. The Board's reasoning for filing the lawsuit may have been well taken. However, this fact does not overcome the realization that the dispute between the Board and the Governor was essentially a turf battle which should be given public scrutiny in all its particulars. In short, it is the public's business.

II

Having upheld the District Court's order voiding the Board's

8

actions, we must now determine whether it correctly awarded plaintiffs their attorney fees. The Board maintains the award of attorney fees was inappropriate in this case, because the Board acted in good faith and under the presumption that their actions were constitutional under § 2-3-203(4), MCA.

The District Court awarded fees under § 2-3-221, MCA, which states:

> A plaintiff who prevails in an action brought in district court to enforce his rights under Article II, section 9, of the Montana constitution may be awarded his costs and reasonable attorney fees.

The award of attorney fees in cases brought under Article II, Section 9 are discretionary with the court  The Board argues that the court incorrectly exercised this discretion because the action was not taken frivolously or in bad faith.

We disagree. By awarding plaintiffs their fees, the District Court obviously recognized the import of its decision and spread the cost of the litigation among its beneficiaries. Due to the particular advantages of enforcement of the right in this case, as well as the resultant public benefits gained by plaintiffs' efforts it was not an abuse of discretion to reimburse them from the public coffers. That is the intent of the statute.

The award of attorney fees is affirmed and pursuant to the plaintiffs' request fees incurred on appeal are also granted and this case is remanded for determination of attorney fees.

_____
Justice

9

We Concur:

_J. A. Turnage_
Chief Justice

_John C. Sheehy_

_Diane G. Barz_

_William E. Hunt Sr._

_John Conway Harrison_

_____
Justices