No. 92-449

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

SJL OF MONTANA ASSOCIATES
LIMITED PARTNERSHIP, d/b/a KTVQ,

        Petitioner and
            Respondent/Cross-Appellant,

  -vs-

CITY OF BILLINGS,

        Respondent and
            Appellant/Cross-Respondent.

FILED

DEC 28 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

      For Appellant/Cross-Respondent:

          James L. Tillotson, City Attorney, Billings,
          Montana

          Bonnie J. Sutherland, Assistant City Attorney,
          Billings, Montana (argued)

      For Respondent/Cross-Appellant:

          William J. O'Connor, II; O'Connor & O'Connor,
          Billings, Montana (argued)

Submitted: February 23, 1993

Decided: December 28, 1993

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal and cross-appeal from an order and memorandum of the Thirteenth Judicial District Court, Yellowstone County, granting petitioner's motion for declaratory judgment, denying petitioner's request for attorney's fees, and finding petitioner's request to void certain actions and for an injunction moot. We reverse.

Appellant City of Billings (City) raises the following issue:

1. Did the District Court err in holding that Article II, Section 9 of the Montana Constitution required that a meeting involving the Billings Public Works Director, the City Engineer, and individuals representing a private contractor and private engineering company be open to the public?

Cross-appellant SJL of Montana Associates Limited Partnership, d/b/a KTVQ (KTVQ), raises the following issues:

2. Did the District Court abuse its discretion in denying KTVQ's request for attorney's fees pursuant to § 2-3-221, MCA?

3. Although the District Court determined that KTVQ's request for an injunction was moot, does the controversy continue under the standard "capable of repetition, yet evading review?"

Because of our resolution of issue one, we need not address issues two and three.

On May 22, 1992, a meeting was held in the office of the Public Works Department for the City of Billings. City Engineer Kurt Corey (Corey), Public Works Director Ken Haag (Haag), and

2

representatives of Empire Sand and Gravel and Engineering Incorporated attended. No members of the city council were present. The purpose of the meeting was to discuss the problems and concerns surrounding the delays in construction on 27th Street in Billings (the 27th Street project) and how to keep the surrounding property owners better informed. No new contracts were entered into and no amendments to the existing contracts were made.

Brian Michael (Michael), a reporter from KTVQ, learned of the meeting on May 20th while following up on a tip that there was a dispute between the City and Empire Sand and Gravel. Corey told him that the press would not be allowed into the meeting because it was a "staff meeting," and that Empire Sand and Gravel did not want the media there. Michael was denied access because the City Attorney had advised Haag that the meeting need not be open to the public.

On May 22, 1992, KTVQ petitioned the District Court for a declaratory judgment and injunctive relief as follows: 1) declaring the right of a KTVQ reporter to attend the ongoing meetings concerning the 27th Street project; 2) requiring the City to release public records, including the plans and amendments for the 27th Street project; 3) voiding any actions taken at the May 22nd meeting; 4) enjoining further meetings unless the reporter was allowed to attend; and 5) requiring the City to pay KTVQ's attorney's fees as provided for in § 2-3-221, MCA.

That afternoon the District Court granted a temporary restraining order enjoining the City and its subdivisions from

3

prohibiting a KTVQ reporter from attending further meetings between the above parties, and the court set a hearing on the petition for June 3rd. Michael was allowed to attend a meeting between the same parties held on May 29th at a local restaurant. After the May 22nd meeting he was also given access to certain documents he had requested.

After the hearing, the District Court allowed the parties time to brief the issues. On July 9th, the court entered an order and memorandum determining the following:

1. KTVQ's request to void the acts taken at the May 22nd meeting was moot as no action was taken;

2. KTVQ's request to enjoin the City was moot because the reporter had been allowed to attend later meetings;

3. KTVQ was entitled to a declaratory judgment that it had a constitutional right to attend meetings between the above individuals regarding the 27th Street project; and

4. KTVQ's request for attorney's fees must be denied.

We begin by pointing out that this case does not involve a "staff meeting" as the City has attempted to characterize it in the proceedings in the District Court and in this Court. During a hearing on this matter, the District Court and the City Attorney engaged in the following discussion:

MR. TILLOTSON: Certainly it was a scheduled meeting. We have many scheduled staff meetings.

THE COURT: Well, now, define a staff meeting.

MR. TILLOTSON: Staff meeting is a meeting attended by governmental employees.

THE COURT: But not members of the public?

MR. TILLOTSON: That's correct, Your Honor.

4

THE COURT: Wasn't this a meeting between staff and members of the public?

MR. TILLOTSON: Yes, it was.

By the City's own admission, this was not a "staff meeting."

I

Does Article II, Section 9 of the Montana Constitution require that these particular meetings be open to the public?

Article II, Section 9 of the Montana Constitution provides:

**Right to know.** No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

The Montana Constitution is to be given a "broad and liberal interpretation . . . ." Arps v. State Highway Comm'n (1931), 90 Mont. 152, 160, 300 P. 549, 553, quoted in Board of Regents v. Judge (1975), 168 Mont. 433, 443, 543 P.2d 1323, 1329. In addition, this Court recently held that:

While the legislature is free to pass laws implementing constitutional provisions, its interpretations and restrictions will not be elevated over the protections found within the Constitution.

In re Lacy (1989), 239 Mont. 321, 325, 780 P.2d 186, 188.

The provisions of Article II, Section 9 are implemented by the open meeting laws, §§ 2-3-201 et seq., MCA. Flesh v. Board of Trustees of Joint School Dist. #2 (1990), 241 Mont. 158, 164, 786 P.2d 4, 8. Thus, the initial question before us is whether the open meeting laws, §§ 2-3-201 et seq., MCA, require the meeting at issue to be open to the public. If so, we need go no further because it will be clear that the City violated these laws in

5

refusing Michael's request to attend. If not, we must examine whether the statutes implementing the constitutional right to know are unduly restrictive of Article II, Section 9.

Under the open meeting laws,

[a]ll meetings of public or governmental bodies, boards, bureaus, commissions, agencies of the state, or any political subdivision of the state or organizations or agencies supported in whole or in part by public funds or expending public funds must be open to the public.

Section 2-3-203, MCA. The legislature's intent, clearly expressed in § 2-3-201, MCA, is that

[a]ctions and deliberations of all public agencies shall be conducted openly. The people of the state do not wish to abdicate their sovereignty to the agencies which serve them. Toward these ends, the provisions of the part [open meeting laws] shall be liberally construed.

The meeting at issue was attended by City Engineer Corey, Public Works Director Haag and private persons. It is clear that the meeting was not one of a public or governmental body, board, bureau or commission. Thus, the only manner in which the meeting might fit within the parameters of § 2-3-203, MCA, is if it can be properly construed as a meeting of a public agency.

The term agency is defined in Part 1 of Title 2, Chapter 3, MCA. That part implements Article II, Section 8 of the Montana Constitution, which provides for the public's right to participate in government operations. However, when a word is defined in the code, that definition is applicable to other parts of the code except where the contrary is plainly indicated. Section 1-2-107, MCA; Department of Revenue v. Gallatin Outpatient Clinic (1988), 234 Mont. 425, 430, 763 P.2d 1128, 1131.

6

Agency is defined in § 2-3-102, MCA, as "any board, bureau, commission, department, authority, or officer of the state or local government authorized by law to make rules, determine contested cases, or enter into contracts . . . ." The City argues that neither Corey nor Haag is a board, bureau, commission, department, or authority. Further, neither is authorized to make rules, determine contested cases, or enter into contracts. KTVQ does not dispute these assertions and, indeed, the record before us is clear that Corey and Haag are City employees who are not authorized to make rules, determine contested cases or enter into contracts. We conclude, therefore, that Montana's open meeting statutes do not require the meeting between Corey, Haag and private persons to be open to the public.

The question remains, then, whether the statutes enacted by the Montana legislature to implement the public's constitutional right to observe the deliberations of public bodies or agencies are unduly restrictive of that right. If so, those statutory interpretations will not be elevated over the protection found within the Constitution. Lacy, 780 P.2d at 188. Based on a careful review of the constitutional history, we must conclude that the statutory definition of agency is not restrictive of the public's right to observe deliberations of public bodies and agencies as contained in Article II, Section 9 of the Montana Constitution.

The constitutional history reveals that Delegate Dorothy Eck introduced what ultimately became Article II, Section 9 of the

7

Montana Constitution. Delegate Eck's proposal, denominated Delegate Proposal No. 57, provided in pertinent part:

> No person shall be deprived of the right to . . . observe the actions and deliberations of all public officials or agencies . . . .

Montana Constitutional Convention 1971-72, Volume I, p. 157. It is clear that Proposal No. 57 was very broad in scope. It applied to <u>actions</u> and <u>deliberations</u> of <u>all public officials and agencies</u> (emphasis added).

Delegate Eck's proposal was not adopted. Instead, the Bill of Rights Committee proposed Section 9, Right to Know, as it was finally passed by the Constitutional Convention and the people of Montana. <u>Montana Con. Con.</u>, Vol. II, p. 621. There it was narrowed from the original scope so that it no longer applied to "actions"--even actions of public agencies; nor did it include any reference to "public officials" or any other individuals.

Referring again to the constitutional history, we are given significant insight into precisely what the constitutional framers intended when utilizing the term "public agency" in Article II, Section 9. We note here for clarity that the floor debate in the Constitutional Convention on Article II, Section 8, preceded the argument on Article II, Section 9, and that as a result most of the debate over the term "public agencies" is covered in that portion of the Convention transcripts.

The following remarks exemplify the thrust of the debate on "governmental agencies":

> DELEGATE DaHOOD: . . . I . . . urge all of the delegates to look at the term "governmental agencies", which is the

8

key to constructing that particular section. . . . Once again, I want to point out, we have in mind the governmental agencies that are miniature legislatures who put together rules and regulations that affect us all.

Montana Con. Con., Vol. V, p. 1664.

DELEGATE McNEIL: . . . I think . . . [governmental agencies] is what the committee intended to reach with this, and that is appointive commissions, bureaus, so forth . . . .

. . .

DELEGATE DaHOOD: . . . [G]overnmental agencies that are not elected, that are appointed, that function to carry out the laws that are passed, are the ones, of course, that will enact rules and regulations and make the decisions that affect people . . . .

Montana Con. Con., Vol. V, p. 1667.

Nothing in these floor debate comments and explanations suggests that there was any intent to make "public agencies" synonymous with individual public employees. It is obvious from these and other remarks that the framers of the Constitution were concerned with governmental entities which had rule-making authority and regulatory powers.

This intent is even more clear when the Bill of Rights Committee's comments on Article II, Section 9, are considered. The Committee specifically cited with approval then-existing § 82.3401, RCM (1947), which states that the legislative intent regarding open meetings; namely "that actions and deliberations of all public agencies shall be conducted openly." Montana Con. Con., Vol. V, p. 1670. Section 82.3401, RCM (1947), subsequently recodified as § 2-3-201, MCA, also contained the legislative declaration of open meeting laws--as they existed both before and after the passage of

the 1972 Constitution--applied to "public boards, commissions, councils, and other public agencies." These are the kind of agencies that the delegates at the Montana Constitutional Convention included in Article II, Section 9.

We hold that, with regard to the meeting at issue here, Montana's open meeting statutes do not restrict the public's constitutional right to know. As a result, we hold that the District Court erred in ruling that Article II, Section 9 of the Montana Constitution requires that a meeting involving the Billings Public Works Director, the City Engineer, and individuals representing a private contractor and a private engineering company be open to the public. This opinion does not address, and shall not be construed as interpreting, the public's right to examine documents as provided for in Article II, Section 9 of the Montana Constitution.

John Conway Harrison
Justice

We concur:

J. A. Turnage
Chief Justice

Karla M. Gray

W. C. McDonough

F. J. Keller
Justices

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

Article II, Section 9, of the Montana Constitution, is clear and self-executing. It does not require resorting to the extrinsic methods of construction relied on by the majority. It provides that:

> No person shall be deprived of the right to examine documents <u>or to observe the deliberations</u> of all public bodies or <u>agencies</u> of state government and <u>its subdivisions</u>, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure. [Emphasis added].

In this case, two members of the City's public works department, the city engineer and the public works director, met with representatives of corporations with whom the City had contracted to discuss and resolve problems that had arisen during the construction of North 27th Street in the City of Billings. Local governments can only act through their employees, and the city engineer and public works director clearly represented the public works department which was an agency of the City of Billings. A public agency is "[a] department or agency of government which has official or quasi official status." Black's Law Dictionary 1227 (6th ed. 1990). A public agent is "[a]n agent of the public, the state, or the government; a person appointed to act for the public in some matter pertaining to the administration of government or the public business." Black's at 64. Ken Haag and Kurt Corey were clearly public agents acting on behalf of a

11

public agency when they attended the meeting that KTVQ sought to observe and record.

Furthermore, deliberations are defined as "[t]he act of weighing and examining the reasons for and against a contemplated act or course of conduct or a choice of acts or means." Black's at 427. To deliberate means "[t]o weigh, ponder, discuss, regard upon, consider." Black's at 426. It is clear that Haag and Corey were engaged in government deliberations when they met with these contractors to resolve problems that had arisen on this construction project.

The majority opinion ignores the plain language of Article II, Section 9, Montana Constitution, in favor of suggestions from the convention history that what it states is not really what it means. However, this form of construction clearly flies in the face of our previous decisions. In *Associated Press v. Board of Education* (1991), 246 Mont. 386, 804 P.2d 376, which was reaffirmed in *Great Falls Tribune v. Great Falls Public Schools* (1992), 255 Mont. 125, 841 P.2d 502, we held that:

> The language of [Article II, Section 9] speaks for itself. It applies to all persons and all public bodies of the state and its subdivisions without exception. Under such circumstances, it is our duty to interpret the intent of the framers from the language of the provision alone and not resort to extrinsic aids or rules of construction in determining the intent of the delegates to the Constitutional Convention.

*Associated Press*, 804 P.2d at 379.

12

What was prohibited by our decision in *Associated Press* is exactly what was done in this case. How can the two approaches be reconciled?

Furthermore, although there is extensive discussion of the definition of "agency" set forth in Montana's open meeting laws, that definition is irrelevant. Any statutory definition which limits the scope of a constitutional provision is unconstitutional. As we stated in *In re Lacy v. City of Billings* (1989), 239 Mont. 321, 325, 780 P.2d 186, 188:

> While the legislature is free to pass laws implementing constitutional provisions, its interpretations and restrictions will not be elevated over the protections found within the Constitution.

Here, the statutory definition of agency clearly limits the plain and common interpretation that is required by our prior decisions.

The majority decision is a substantial blow to the public's right to know guaranteed by our State Constitution. It allows public agencies and their officers to conduct public business in secret and without public scrutiny. This is not in the public's interest and is exactly what our constitutional right to know was designed to prevent.

Neither can any public policy reason be constructed for denying members of the media the opportunity to observe this agency's meeting with other members of the public in a nondisruptive way. There is no serious argument which can be made that the public interest is better served by keeping from the

13

citizens of Billings the most direct information of how their affairs are being handled.

Therefore, I dissent from the majority opinion. I would affirm the District Court's conclusion that when members of the news media were excluded from this meeting between members of the Billings public works department and contractors with whom it did business, that Montana's open meeting law found at Article II, Section 9, of the Montana Constitution was violated. However, because it was necessary to bring this court action to enforce that constitutional right, I believe that attorney fees should have been recoverable under § 2-3-221, MCA, and I would have reversed the District Court's decision to deny those fees.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing dissent.

_____
Justice

14