JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion.
Article II, Section 9, of the Montana Constitution, is clear and self-executing. It does not require resorting to the extrinsic methods of construction relied on by the majority. It provides that:
No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the *150 demand of individual privacy clearly exceeds the merits of public disclosure. [Emphasis added].
In this case, two members of the City’s public works department, the city engineer and the public works director, met with representatives of corporations with whom the City had contracted to discuss and resolve problems that had arisen during the construction of North 27th Street in the City of Billings. Local governments can only act through their employees, and the city engineer and public works director clearly represented the public works department which was an agency of the City of Billings. A public agency is “[a] department or agency of government which has official or quasi official status.” Black’s Law Dictionary 1227 (6th ed. 1990). A public agent is “[a]n agent of the public, the state, or the government; a person appointed to act for the public in some matter pertaining to the administration of government or the public business.” Black’s at 64. Ken Haag and Kurt Corey were clearly public agents acting on behalf of a public agency when they attended the meeting that KTVQ sought to observe and record.
Furthermore, deliberations are defined as “[t]he act of weighing and examining the reasons for and against a contemplated act or course of conduct or a choice of acts or means.” Black’s at 427. To deliberate means “[t]o weigh, ponder, discuss, regard upon, consider.” Black’s at 426. It is clear that Haag and Corey were engaged in government deliberations when they met with these contractors to resolve problems that had arisen on this construction project.
The majority opinion ignores the plain language of Article II, Section 9, Montana Constitution, in favor of suggestions from the convention history that what it states is not really what it means. However, this form of construction clearly flies in the face of our previous decisions, hi Associated Press v. Board of Education (1991), 246 Mont. 386, 804 P.2d 376, which was reaffirmed in Great Falls Tribune v. Great Falls Public Schools (1992), 255 Mont. 125, 841 P.2d 502, we held that:
The language of [Article II, Section 9] speaks for itself. It applies to all persons and all public bodies of the state and its subdivisions without exception. Under such circumstances, it is our duty to interpret the intent of the framers from the language of the provision alone and not resort to extrinsic aids or rules of construction in determining the intent of the delegates to the Constitutional Convention.
Associated Press, 804 P.2d at 379.
*151 What was prohibited by our decision in Associated Press is exactly what was done in this case. How can the two approaches be reconciled?
Furthermore, although there is extensive discussion of the definition of “agency” set forth in Montana’s open meeting laws, that definition is irrelevant. Any statutory definition which limits the scope of a constitutional provision is unconstitutional. As we stated in In re Lacy v. City of Billings (1989), 239 Mont. 321, 325, 780 P.2d 186, 188:
While the legislature is free to pass laws implementing constitutional provisions, its interpretations and restrictions will not be elevated over the protections found within the Constitution.
Here, the statutory definition of agency clearly limits the plain and common interpretation that is required by our prior decisions.
The majority decision is a substantial blow to the public’s right to know guaranteed by our State Constitution. It allows public agencies and their officers to conduct public business in secret and without public scrutiny. This is not in the public’s interest and is exactly what our constitutional right to know was designed to prevent.
Neither can any public policy reason be constructed for denying members of the media the opportunity to observe this agency’s meeting with other members of the public in a nondisruptive way. There is no serious argument which can be made that the public interest is better served by keeping from the citizens of Billings the most direct information of how their affairs are being handled.
Therefore, I dissent from the majority opinion. I would affirm the District Court’s conclusion that when members of the news media were excluded from this meeting between members of the Billings public works department and contractors with whom it did business, that Montana’s open meeting law found at Article II, Section 9, of the Montana Constitution was violated. However, because it was necessary to bring this court action to enforce that constitutional right, I believe that attorney fees should have been recoverable under § 2-3-221, MCA, and I would have reversed the District Court’s decision to deny those fees.
JUSTICE HUNT joins in the foregoing dissent.