No. 93-096

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

COMMON CAUSE OF MONTANA, a state
organization Of COMMON CAUSE, a
not-for-profit corporation; and
HELENA INDEPENDENT RECORD,

  Plaintiffs and Appellants,

  -vs-

STATUTORY COMMITTEE TO NOMINATE
CANDIDATES FOR COMMISSIONER OF
POLITICAL PRACTICES; and
MARC RACICOT, as Governor
of the State of Montana,

  Defendants and Respondents,

FILED

FEB 10 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        James P. Reynolds: Reynolds, Motl, Sherwood & Wright
        Helena, Montana


    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General, Beth Baker
        Ass't Attorney General, Helena, Montana


                          Submitted:   December 7, 1993

                          Decided:   February 10, 1994

Filed:

_____
            Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

This case involves the effect of Montana's constitutional "right to know" and open meeting statutes on the selection and appointment of the Commissioner of Political Practices (Commissioner). Common Cause of Montana (Common Cause), a nonprofit organization that seeks to promote open, accessible and democratic government, challenged the appointment of Edward Argenbright (Argenbright) as Commissioner in the First Judicial District Court, Lewis and Clark County. Common Cause argued that the statutory committee whose function is to provide the governor with a list of names of possible candidates for the position had violated constitutional and statutory provisions guaranteeing the public a right to observe the deliberations of public bodies. Although we determine that the committee violated Montana's open meeting statutes, we conclude, under these unique circumstances, that the violation does not require Argenbright's removal from the office of Commissioner.

The facts surrounding this appeal are undisputed. Section 13-37-102, MCA, establishes a four-member committee to submit a list of names of possible candidates for the office of Commissioner to the governor for consideration. In 1992, the committee was comprised of Speaker of the House Hal Harper, President of the Senate Joseph Mazurek, Senate Minority Floor Leader Bruce Crippen, and House Minority Floor Leader John Mercer (the Committee). Due to an impending vacancy in the office in 1993, the Committee held several phone conversations in November of 1992 to discuss the

2

qualifications of the individuals who had applied for the position. During a meeting held November 20, 1992, Mazurek, Crippen and Mercer discussed the individuals they would recommend for the position. Harper did not attend. The meeting was not announced to the public and was not attended by members of the public.

Following the meeting, three members of the Committee submitted a list of five names to Governor Stan Stephens. The list included Argenbright, two individuals recommended by Common Cause, and two others. Representative Harper submitted a separate list naming the two individuals recommended by Common Cause. Governor Stephens interviewed the five applicants and announced the appointment of Argenbright to the position on December 1, 1992.

On December 18, 1992, Common Cause, the Helena Independent Record, and the Great Falls Tribune filed suit against the Committee and Governor Stephens (collectively, the Committee). They sought to void the Committee's submission of the list and, on that basis, the governor's appointment of Argenbright. They asserted that the Committee's November 20 meeting violated Montana's open meeting statutes and Article II, Section 9, and Article V, Section 10(3), of the Montana Constitution. They also requested a temporary restraining order prohibiting Governor Stephens from submitting the appointment to the Senate for confirmation. The District Court declined to issue the temporary restraining order on December 22, 1992.

Argenbright took the oath of office and began performing his duties as Commissioner on January 1, 1993. Both parties moved for

3

summary judgment. Following a February 9, 1993, hearing, the District Court granted summary judgment in favor of the Committee. The court determined that the governor's appointment was not subject to the open meeting laws and, therefore, could not be voided pursuant to § 2-3-213, MCA. The court also determined that the governor's appointment was not dependent on the actions of the Committee and, thus, could not be voided due to any flaw in the Committee's procedures.

Common Cause and the Helena Independent Record (collectively, Common Cause) filed a notice of appeal. On March 25, 1993, the Montana Senate began confirmation proceedings which concluded on April 13, 1993, confirming Argenbright's appointment as Commissioner.

Our standard in reviewing a grant of summary judgment is the same as that initially utilized by the trial court. McCracken v. City of Chinook (1990), 242 Mont. 21, 24, 788 P.2d 892, 894. Summary judgment is appropriate when the pleadings, depositions, and other documents on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. The parties have submitted stipulated facts and agree that only issues of law are before us. Therefore, our standard of review is whether the District Court's interpretation of the law is correct. Mooney v. Brennan (1993), 257 Mont. 197, 199, 848 P.2d 1020, 1022.

As a threshold issue, the Committee contends that Common Cause's claim of an alleged constitutional and statutory violation

4

is moot because a change in circumstances prevailing at the beginning of the litigation now precludes meaningful relief. The changed circumstance, according to the Committee, is that Argenbright's appointment has been confirmed by the Senate, vesting Argenbright with title to the office. We disagree that the claim is moot.

When faced with constitutional questions which are capable of repetition yet could avoid review, this Court will consider the merits of the issues raised on appeal. Romero v. J & J Tire (1989), 238 Mont. 146, 148, 777 P.2d 292, 294; Butte-Silver Bow Local Gov't v. Olsen (1987), 228 Mont. 77, 82, 743 P.2d 564, 567. As we stated in Butte-Silver Bow:

> [t]he exception to mootness for those actions that are capable of repetition, yet evading review, usually is applied to situations involving governmental action where it is feared that the challenged action will be repeated.

Butte-Silver Bow, 743 P.2d at 567.

Here, the alleged violation of the open meeting statutes and the public's right to know is capable of recurring, in the context of both future selection and appointment procedures for the position of Commissioner and actions taken by other purely advisory entities. Further, to allow an alleged violation of the public's right to know escape judicial scrutiny, simply because legal proceedings are not always swift, would soon vitiate that important right guaranteed to the people of Montana by their constitution. Thus, we conclude that the issues raised by this appeal are not moot.

The remaining legal issues are whether the Committee's

5

November 20, 1992, meeting violated the public's right to know and, if so, whether such a violation requires this Court to void the entire appointment process, resulting in Argenbright's removal from office. Regarding the first issue, Common Cause argues that the Committee's November 20 meeting violated Montana's open meeting statutes and Article II, Section 9 of the Montana Constitution. The District Court did not analyze this issue and, on appeal, the Committee does not address its merits.

The "right to know" is found at Article II, Section 9, of the Montana Constitution and provides:

> Right to know. No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

This constitutional mandate is protected and implemented primarily through Montana's open meeting statutes, codified at §§ 2-3-201, et seq., MCA. SJL of Montana v. City of Billings (Mont. 1993), ___ P.2d ___, ___, 50 St.Rep. 1726, 1727; Jarussi v. Board of Trustees (1983), 204 Mont. 131, 138, 664 P.2d 316, 319; Board of Trustees v. Board of County Comm'rs (1980), 186 Mont. 148, 152, 606 P.2d 1069, 1071. Thus, the initial question before us is whether the open meeting statutes require the meeting at issue to be open to the public. SJL, 50 St.Rep. at 1727. If so, we need not proceed to constitutional analysis; it is elementary that courts should avoid constitutional questions if an issue can be resolved otherwise. Wolfe v. Montana Dep't of Labor and Ind. (1992), 255 Mont. 336, 339, 843 P.2d 338, 340.

6

The legislature's expressed intent that the open meeting laws be liberally construed, contained in § 2-3-201, MCA, guides our interpretation of these statutes. Section 2-3-203(1), MCA, provides, in pertinent part:

> All meetings of public or governmental bodies, boards, bureaus, commissions, agencies of the state, or any political subdivision of the state or organizations or agencies supported in whole or in part by public funds or expending public funds must be open to the public.

None of the listed entities are further defined in the open meeting statutes. It is clear, however, that the committee statutorily established by § 13-37-102, MCA, is not a board, bureau, or commission of the state, under any common understanding of those terms.

Additionally, while the word agency is not defined in the open meeting statutes themselves, we determined in SJL that the definition of "agency" contained in § 2-3-102, MCA, applies to the term "agencies" used in § 2-3-203, MCA. SJL, 50 St.Rep. at 1728. Section 2-3-102, MCA, defines agency as any board, bureau, commission, department, authority, or officer of the state or local government authorized by law to make rules, determine contested cases, or enter into contracts. It is evident that the statutory committee is not authorized to make rules, determine contested cases or enter into contracts. Accordingly, the Committee is not an "agency" under § 2-3-203, MCA. Therefore, unless the Committee properly can be characterized as a "public or governmental body" under § 2-3-203, MCA, its November 20, 1992, meeting does not fall within the purview of the open meeting statutes.

As stated above, the legislature did not define **"public body"** or "governmental body" in the open meeting statutes. When interpreting statutes, it is fundamental that words and phrases are to be given their plain, ordinary and usual meaning. Watson & Assoc. v. Green **(1992),** 253 Mont. 291, 293, 833 **P.2d** 199, 200; <u>Jarussi,</u> 664 **P.2d** at 319. Webster's Third International Dictionary defines **"body"** as a group of individuals organized for some purpose. **"Public"** is defined in Black's Law Dictionary, 4th Ed. 1968, as pertaining to a state, nation or community, while "governmental" is defined similarly as pertaining to government. Thus, the common understanding of the phrase "public or governmental body" would include a group of individuals organized for a governmental or public purpose.

Section 13-37-102, MCA, which establishes the committee, provides, in pertinent part:

> [a] four-member selection committee comprised of the speaker of the house, the president of the senate, and the minority floor leaders of both houses shall submit to the governor a list of not less than two or more than five names of individuals for his consideration.

Here, the Committee has a clear public and governmental purpose--to assist in the governor's selection of a Commissioner by providing a slate of names of possible candidates for consideration. This group of individuals is statutorily organized for that specific governmental task. We conclude, therefore, that under the plain meaning of § 2-3-203, MCA, the Committee is subject to the requirements of the open meeting statutes because it is a public or governmental body.

8

We find support for this conclusion in case law of sister states. Laws requiring that meetings of governmental or public bodies be open to the public have been enacted in some form in every state. Delaware Solid Waste Authority v. News-Journal (Del.Supr. 1984), 480 A.2d 628, 631; Annot. 33 A.L.R.3d 1070 (1971 & Supp.1993). A common thread throughout the statutory definitions in most states is that the entity have a governmental or state function and that the entity is supported in whole or in part by public funds. See News and Observer Pub. Co. v. Poole (N.C. 1992), 412 S.E.2d 7, 15; American Soc. for the Prevention of Cruelty to Animals v. Board of Trustees (N.Y. 1992), 591 N.E.2d 1169, 1170; Carroll County Educ. Ass'n v. Board of Educ. (Md. 1982), 448 A.2d 345, 347.

Moreover, in a factually similar case, the Michigan Supreme Court determined that a selection committee and its advisory subcommittees organized to select a university president were "public bodies" under Michigan's Open Meetings Act. Booth Newspapers v. University of Michigan (Mich. 1993), 507 N.W.2d 422, 429. The Michigan definition of "public body" focused on the entity's ability to exercise governmental or proprietary authority. The Michigan Supreme Court held that the selection of a public university president constituted the exercise of governmental authority regardless of whether the authority was exercised by the nominating committee, the board or even the advisory subcommittees. Booth, 507 N.W.2d at 429. The same reasoning applies to the selection of the Commissioner in Montana. The "public or

9

governmental" nature of the Committee's purpose is obvious. Further, the Committee is created and organized by state statute to perform its governmental function.

Having determined that the Committee is subject to the requirements of the open meeting statutes, we focus on whether its November 20, 1992, meeting violated those statutes. Section 2-3-202, MCA, defines a "meeting" as a convening of a quorum of the constituent membership of an entity described in § 2-3-203, MCA, to hear, discuss or act upon a matter over which that entity has supervision, control, jurisdiction or advisory power. On November 20, 1992, three of the four members met to discuss the candidates and the transmission of the list of names to the governor. Thus, by definition, a "meeting" was held. See Board of Trustees, 606 P.2d at 1073.

Additionally, Montana law requires that public notice be given of meetings subject to the requirements of the open meeting statutes. Board of Trustees, 606 P.2d at 1073. Without public notice, an "open" meeting is open in theory only, not in practice. Board of Trustees, 606 P.2d at 1073. In this case, the parties stipulated that no public notice was given of the Committee's November 20, 1992, meeting. We conclude, therefore, that the Committee violated § 2-3-203, MCA, of the open meeting statutes.

Having concluded that the open meeting statutes apply and were violated by the Committee, we turn to the effect of that violation on Argenbright's appointment. Common Cause contends that the Committee's decision to submit the names to the governor should be

10

voided pursuant to § 2-3-213, MCA, which allows a court to void a decision made in violation of § 2-3-203, MCA. Based on the nexus between the Committee's recommendations and the governor's appointment of Argenbright, Common Cause argues that Argenbright's appointment is tainted by the Committee's statutory violation. Thus, Common Cause contends that the entire appointment process should be voided and Argenbright removed from office, relying on Board of Trustees.

The Committee argues, on the other hand, that voiding the Committee's decision and submission of its list to the governor would not affect the governor's appointment of Argenbright. It argues that the governor's appointment is statutorily independent of the Committee's recommendations, as indicated by the language of § 13-37-102(1), MCA. Because no legal nexus exists between the Committee's recommendations and the governor's appointment, the Committee asserts that any flaw in its recommendation does not require Argenbright's appointment to be voided.

Section 2-3-213, MCA, provides that any decision made in violation of § 2-3-203, MCA, may be declared void by a district court. We have concluded that the Committee's November 20, 1992, meeting violated § z-3-203, MCA. However, in this unique situation, we conclude that the District Court did not abuse its discretion in refusing to void the entire appointment and confirmation process based on the Committee's violation of the open meeting laws.

In Board of Trustees, the county commissioners held an

unannounced meeting at which a controversial subdivision was approved. We determined that the failure to give notice of the meeting had the effect of invalidating the decision made there: we concluded that the district court clearly abused its discretion under § 2-3-213, MCA, in deciding to "look past form to the substance" and in refusing to void the commissioners' approval of the subdivision. Board of Trustees, 606 P.2d at 1074.

Unlike the commissioners' approval of the subdivision in Board of Trustees, the Committee's submission of a slate of names to the governor is not directly linked to the eventual action taken-- Argenbright's appointment by the governor and senate confirmation. The commissioners' decision in Board of Trustees was the only official act required for approval of the subdivision. Here, while required by statute, the Committee's decision is not in any way, or to any extent, binding on the governor's ultimate choice of a candidate to fill the office of Commissioner.

Section 13-37-102, MCA, states:

> There is a commissioner of political practices who is appointed by the governor, subject to confirmation by a majority of the senate. A four member selection committee . . . shall submit to the governor a list of not less than two or more than five names of individuals for his consideration. . . .

The language "for his consideration" illustrates the advisory role of the Committee. Under § 13-37-102, MCA, the governor is free is disregard entirely the list of names submitted by the Committee. In direct contrast, §§ 3-1-1011 and 2-15-1813(2), MCA, (relating to appointment of Montana's judges and the coordinator of Indian affairs, respectively) both require the governor to choose an

12

appointee from the list of names submitted by an advisory committee. If the legislature had desired a similar result in § 13-37-102, MCA, similar mandatory language would have been added.

Therefore, although the Committee violated the open meeting statutes by holding its November 20, 1992, meeting without public notice, the only "decision" that could be voided under § 2-3-213, MCA, is the Committee's choice of the names to submit to the governor. No statutory violations occurred in the governor's appointment of Argenbright or the Senate's confirmation of that appointment. As explained, § 13-37-102(1), MCA, establishes that the two critical steps in the selection of the Commissioner are "the appointment and confirmation" of the Commissioner. Those steps, properly performed, are sufficient to vest Argenbright with title to the office of Commissioner.

In effect, Common Cause is challenging Argenbright's right to hold the position of Commissioner. Three statutory provisions provide the exclusive means by which Argenbright can be removed from his office. First, under the quo warranto provisions found at §§ 27-28-101, et seq., MCA, either the attorney general or an individual claiming to be entitled to the public office can commence a quo warranto proceeding against a person unlawfully holding public office. Sections 27-28-103 and -301, MCA. Second, § 13-37-102(2), MCA, provides for removal of the Commissioner prior to the expiration of the term of office for incompetence, malfeasance, or neglect of duty. Finally, the Commissioner could be removed from office by impeachment or if prosecuted for

13

official misconduct. Section 37-13-105, MCA. None of those procedures is involved in this case.

The District Court did not find a statutory or constitutional violation in the Committee's November 20, 1992, meeting, and we have determined that the meeting did in fact violate § 2-3-203, MCA. Thus, the District Court erred in this regard. However, because the Committee's submission of the names is statutorily independent of the governor's choice and not in any way binding on that choice, we also conclude that the Committee's statutory violation does not require that the entire appointment process be voided. Thus, in this case, the District Court's ultimate refusal to void Argenbright's appointment pursuant to § 2-3-213, MCA, was not an abuse of discretion.

Notwithstanding the unique circumstances of this case, open meetings violations remain of utmost concern to this Court. Nothing in this opinion should be interpreted to suggest that violations of open meeting laws by _any_ entity subject to those laws will not result in voiding decisions so reached. We will not hesitate to affirm a district court's determination to void such decisions or reverse a court's refusal to do so.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

14

John Conway Harrison

Justices

Justice William E. Hunt, Sr., dissenting.

I dissent. Like the majority, I determine that the committee violated Montana's open meeting statutes, but reach a different conclusion about what the result should be. I do not find, as the majority did, that the unique circumstances of the violation do not taint the entire process from start to finish. I conclude that it does and the only cure is to commence the proceedings again.

This dissent is not intended as a reflection upon the qualifications of the incumbent, nor his performance in the job from the time he accepted the appointment. On the contrary, there is nothing in the record to indicate anything but competence on his part.

This dissent is aimed at the idea that a process can be tainted from the start, but somehow or other cured en route because the committee which held the meeting without giving notice recommended a person acceptable to the Governor who, if he had found the nominee unacceptable, could have selected another person, even if that second person was not recommended by the nominating committee. While there may be better ways to process a nomination, this is the one provided by statute, and is the one that put the present office holder in the office. It was tainted from the start because of a violation of the open meeting law.

I think the warning at the end of the majority's opinion that this Court will not "hesitate to affirm a district court's determination to void such decisions or reverse a court's refusal

16

to do so" rings hollow in view of this Court's conclusion in this case.

I would hold that the process should be started over and conducted in accordance with Montana's Constitution and statutes.

_____
Justice

Justice Terry N. Trieweiler joins in the foregoing dissent.

_____
Justice

17

February 10, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


James P. Reynolds, Esq.
Reynolds, Motl, Sherwood and Wright
401 No. Last Chance Gulch
Helena, MT 59601

Hon. Joseph P. Mazurek, Attorney General
Beth Baker, Assistant
Justice Bldg.
Helena, MT 59620


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy