JUSTICE McKINNON,
dissenting.
¶24 I dissent from the Court’s decision because the undisputed material facts establish that the fourth School Board member’s attendance and participation in the July 13,2012 meeting rendered it a meeting of the full School Board, regardless of whether the fourth School Board member (Patricia Lewis) believed she was attending the *220 meeting as a “private citizen.”[1]
¶25 Article II, Section 9 of the Montana Constitution provides:
No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.
This provision, commonly referred to as the “right to know,” has been implemented and protected by the Legislature through the open-meeting laws, codified at Title 2, chapter 3, part 2, MCA. We recognized in Great Falls Tribune Co. v. Great Falls Public Schools, 255 Mont. 125, 841 P.2d 502 (1992), that Article II, Section 9 “is unambiguous and capable of interpretation from the language of the provision alone.” 255 Mont. at 129, 841 P.2d at 504; accord Great Falls Trib. Co. v. Day, 1998 MT 133, ¶ 30, 289 Mont. 155, 959 P.2d 508. In Associated Press v. Board of Public Education, 246 Mont. 386, 804 P.2d 376 (1991), we observed that since Article II, Section 9 “is unique, clear and unequivocal,” we are “precluded, by general principles of constitutional construction, from resorting to extrinsic methods of interpretation.” 246 Mont. at 391, 804 P.2d at 379; accord Great Falls Pub. Schs., 255 Mont. at 129, 841 P.2d at 504; Day, ¶ 30.
¶26 The Legislature’s expressed intent is that public boards and agencies in this State “exist to aid in the conduct of the peoples’ business,” that the people “do not wish to abdicate their sovereignty to the agencies which serve them,” and, therefore, that “actions and deliberations of all public agencies shall be conducted openly.” Section 2-3-201, MCA. “Toward these ends, the provisions of the [open-meeting laws] shall be liberally construed.” Section 2-3-201, MCA; accord Common Cause of Mont. v. Statutory Comm, to Nominate Candidates, 263 Mont. 324, 329, 868 P.2d 604, 607 (1994) (“The legislature’s expressed intent that the open meeting laws be liberally construed ... guides our interpretation of these statutes.”).
¶27 “All meetings of public or governmental bodies, boards, bureaus, commissions, agencies of the state, or any political subdivision of the state or organizations or agencies supported in whole or in part by public funds or expending public funds, including the supreme court, must be open to the public.” Section 2-3-203(1), MCA (emphasis *221 added). The term “meeting” is defined as
the convening of a quorum of the constituent membership of a public agency or association described in 2-3-203, whether corporal or by means of electronic equipment, to hear, discuss, or act upon a matter over which the agency has supervision, control, jurisdiction, or advisory power.
Section 2-3-202, MCA. We have previously established that “[njothing in the plain language of § 2-3-202, MCA ... , requires that a meeting produce some particular result or action, or that a vote on something be taken. All that is required is that a quorum of the membership convenefs] to conduct its public business.” Associated Press v. Crofts, 2004 MT 120, ¶ 30, 321 Mont. 193, 89 P.3d 971 (emphasis added). The constitutional guarantee extends to all “deliberations” of a public body. Mont. Const, art. II, § 9.
¶28 To permit and encourage the public to participate in agency decisions, each agency is required to develop procedures that “ensure adequate notice and assist public participation before a final agency action is taken that is of significant interest to the public.” Section 2-3-103(l)(a), MCA. Montana law thus requires that public notice be given of meetings that are subject to the requirements of the open-meeting laws. We have acknowledged that “[i]t is difficult to envision an open meeting held without public notice that still accomplishes the legislative purpose of the Montana ‘open meeting’ statutes. Without public notice, an open meeting is open in theory only, not in practice. This type of clandestine meeting violates the spirit and the letter of the Montana Open Meeting Law.” Bd. of Trustees v. Bd. of Co. Commrs., 186 Mont. 148, 155-56, 606 P.2d 1069, 1073 (1980).
¶29 In this case, while the Court identifies several disputed facts as a reason to reverse the District Court’s order granting summary judgment, Opinion, ¶ 16, it is my view that the material facts are undisputed and that the District Court correctly focused on those undisputed material facts in analyzing the alleged open-meeting violation. The undisputed facts material to Article II, Section 9 and §§ 2-3-201, -202, and -203(1), MCA, establish that the Budget Subcommittee of the School Board held a meeting on July 13, 2012, to discuss the 2012-2013 school budget. The meeting was noticed up as a meeting of the Budget Subcommittee, not the School Board. Present at the meeting, however, were the three members of the Budget Subcommittee plus a fourth School Board member who was not on the subcommittee. A “quorum” of the School Board is defined as four or more members of the School Board. Ms. Lewis, the fourth member of the School Board and the only board member not on the Budget *222 Subcommittee, asked questions during the meeting about the budget process. Following the meeting, Lewis, via email, made certain changes or clarifications to the minutes/notes of the July 13, 2012 meeting. Lewis’s changes were subsequently circulated among the four School Board members-the quorum-in attendance atthe July 13,2012 meeting.[2]
¶30 Based on the foregoing undisputed facts, “a quorum of the constituent membership of a public agency,” § 2-3-202, MCA-i.e., four members of the School Board-was present on July 13, 2012. A matter over which the School Board has “supervision, control, jurisdiction, or advisory power,” § 2-3-202, MCA-i.e., the school budget-was heard and discussed. There was participation by a quorum of School Board members in “hearting], discuss[ing], or act[ing] upon,” § 2-3-202, MCA, matters within the School Board’s jurisdiction. The meeting by a quorum of the School Board was not properly noticed as a School Board meeting.
¶31 These undisputed facts, in light of the “clear and unequivocal” language of our Constitution, Associated Press, 246 Mont. at 391, 804 P.2d at 379, establish that the meeting of July 13,2012, did not comply with Montana’s open-meeting laws. A straightforward application of the statutory provisions necessarily leads to the conclusion that a quorum of the School Board heard, discussed, and otherwise conducted school business without properly noticing the meeting as a School Board meeting. The disputed facts as to what occurred at the meeting are irrelevant, as long as business of the School Board was heard, discussed, or acted upon-as it was here.
¶32 The Court’s decision today will lead government agencies down a slippery slope by raising the question of whether presence at a public meeting of the body upon which a member serves constitutes a quorum. We have previously recognized that a “quorum” of a given body consists of members who “assemble” or are “in attendance” at “any particular meeting” of the body. Crofts, ¶ 31. The Court muddles this rule by holding that board members may assemble or be in attendance at a public meeting without constituting a quorum.
¶33 Our Constitution mandates that the deliberations of all public bodies or agencies be open. Our open-meeting laws exist to implement this constitutional guarantee. A gathering of School Board members *223 at the county rodeo or at the local coffee shop, as the Court posits, is not necessarily impermissible under the open-meeting laws. However, a gathering of four School Board members at the rodeo or coffee shop is impermissible-as it is similarly impermissible when four members assemble at a Budget Subcommittee meeting-if they “hear, discuss, or act upon,” § 2-3-202, MCA, the school budget during that gathering. We should not allow the open-meeting laws to be evaded on the ground that a member of a public body, which has assembled as defined in § 2-3-202, MCA, claims she was attending the meeting as a private citizen. I submit that Lewis’s inquiries regarding the budgetary process directly related to her subsequent decision, made when she wore her “School Board member” hat, on whether to approve recommendations of the Budget Subcommittee concerning the 2012-2013 budget. Lewis’s presence and inquiries clearly constituted “deliberations” of a matter which the School Board was considering and which the public was entitled, therefore, to receive proper notice of and to observe.
¶34 The Court opines that “the better policy” would be to encourage members of public bodies to attend and observe subcommittee meetings along with members of the public “so they can be better educated and informed about matters that they will later vote on in their official capacities.” Opinion, ¶ 20. While such “policy” considerations might be appropriate if we were articulating the substance of the right to know in the first instance, we are not in a position to do that here. The Delegates debated the competing “policy” considerations during the 1972 Constitutional Convention and struck the balance they deemed appropriate. That balance is now set forth in the Constitution and the statutes which implement the right to know. It is not this Court’s prerogative to adopt what it feels is a “better” policy. The constitutional and statutory provisions are clear: When a quorum of the board convenes “to hear, discuss, or act upon a matter over which the agency has supervision, control, jurisdiction, or advisory power,” § 2-3-202, MCA, “[n]o person shall be deprived of the right... to observe the [board’s] deliberations,” Mont. Const, art. II, § 9. The open-meeting laws include public scrutiny of the deliberative process which, in my view, necessarily includes public scrutiny of the information utilized by board members to make their decisions.
¶35 The constitutional and statutory framework is reasonable and functions well, when it is properly applied. Again, the scenario described above-a gathering of board members at the county rodeo or coffee shop-is not impermissible if “a matter over which the agency *224 has supervision, control, jurisdiction, or advisory power” is not being considered. Section 2-3-202, MCA. But it is impermissible if the public’s business (such as school budgets) is being considered by “a quorum of the constituent membership” of the public body (such as a quorum of the School Board) without proper notice and without being open to the public. Sections 2-3-103, -202, -203, MCA. We have held that
our constitution mandates that the deliberations of public bodies be open, which is more than a simple requirement that only the final voting be done in public. Devices such as not fixing a specific membership of a body, not adopting formal rules, not keeping minutes in violation of § 2-3-212, MCA, and not requiring formal votes, must not be allowed to defeat the constitutional and statutory provisions which require that the public’s business be openly conducted.
Crofts, ¶ 31.1 would add to this list that purporting not to “convene” a quorum of the public agency, Opinion, ¶¶ 19-21, but otherwise satisfying the definition of “meeting” in § 2-3-202, MCA, has the potential to defeat the open-meeting laws and the requirement that the public’s business be openly conducted. The Court’s approach in this case will enable public bodies to circumvent the open-meeting laws by announcing that they never “convened” a meeting, even though a quorum of the constituent membership was present and discussed matters over which the agency has supervision, control, jurisdiction, or advisory power. The Court’s restrictive interpretation of “convening” in § 2-3-202, MCA, is contrary to the legislative mandate that our open-meeting laws be “liberally construed” in favor of openness. Section 2-3-201, MCA; Crofts, ¶ 22.
¶36 The Court states that “[pjenalizing those members and the public bodies they serve by an unwarranted application of the statute creates a difficult labyrinth for public servants and threatens to turn any Saturday night at the county rodeo into a board meeting that must be noticed.” Opinion, ¶ 20. I question, however, whether a “penalty” is being imposed when the person is not being prohibited from attending the meeting but, rather, is simply being held to the obligations and responsibilities of his or her position as a member of the public body. Significantly, the only exception provided for by the plain language of Article II, Section 9 applies when “the demand of individual privacy clearly exceeds the merits of public disclosure.” It thus is difficult for me to accept that our fundamental constitutional principles of open government should yield to a public official’s desire to attend, as a “private citizen,” a meeting of the public body of which she is a *225 member.[3]
¶37 We have previously held, and it is my view, that the Constitutional Convention Delegates “made a clear and unequivocal decision that government operates most effectively, most reliably, and is most accountable when it is subject to public scrutiny.” Day, ¶ 34. Our open-meeting laws exist to implement accountability of government to the public. This fundamental principle of our State’s constitutional law, and the existence of a clear statutory framework to protect this principle, serves as the basis for this Dissent. Although we may be urged and encouraged at times to manipulate an exception into the “clear and unequivocal” language of our open-meeting laws-such as to find that a quorum was not “convened”-I fear that such exceptions will dilute the strength of our commitment to open government. “While on any given occasion there may be legitimate arguments for handling government operations privately, the delegates to our Constitutional Convention concluded that in the long-term those fleeting considerations are outweighed by the dangers of a government beyond public scrutiny.” Day, ¶ 35. In my view, our decision today blurs these constructs and ignores a “clear and unequivocal” constitutional and statutory framework for applying our open-meeting laws. “All that is required is that a quorum of the membership convene[s] to conduct its public business.” Crofts, ¶ 30. Our fundamental constitutional right to open meetings of our public bodies should not be made to depend on any particular interpretation that a member of a public body places on his or her role and degree of participation when a quorum of the public body has assembled and discussed agency matters.
¶38 Based on the undisputed material facts, I would hold that Lewis’s attendance and participation at the July 13, 2012 Budget Subcommittee meeting rendered it a meeting of the full School Board, regardless of whether Lewis claims she was attending the meeting as a private citizen, and that the meeting did not comply with Montana’s open-meeting laws. To the extent the Court holds otherwise, I strongly disagree.
¶39 I dissent.

 It should be noted preliminarily that neither the District nor the Monitor disputes that the Budget Subcommittee meeting was itself subject to the open-meeting laws.

 1 note that this act alone of making substantive changes to the minutes/notes arguable constituted a violation of § 2-3-202, MCA, as it was a discussion, by “electronic” means, of a matter relating to School Board business.

 Article II, Section 9 is contained in the Montana Constitution’s Declaration of Rights and is, therefore, a fundamental right. State v. Tapson, 2001 MT 292, ¶ 15, 307 Mont. 428, 41 P.3d 305.