In the Matter of the Application of ANN HAVENDER, Petitioner, to Test the Legality of an Election of Officers of the Texas Club of New York City.

HELGA BAKER et al., Respondents.

Supreme Court, Special Term, New York County, June 14, 1943.

*Kraushaar & Kraushaar* for petitioner.

*Nicholas T. Rogers* for respondents.

HAMMER, J.  This proceeding under section 25 of the General Corporation Law is brought to test the legality of an election of officers of the Texas Club of New York City, allegedly held

by respondents, and to confirm the claimed election of petitioner and others as the duly elected officers and directors. The organization is of women natives of Texas or daughters of Texans. It was incorporated in 1909 to provide and promote social intercourse between its members, to study and perpetuate the historical art, literature and music of Texas, to keep alive Texan traditions and history and to honor and perpetuate the memory of the heroic founders of the State of Texas. The estimable ladies who shared in those lofty ideals acted in concord and unison to accomplish the aims and purposes of their organization until in or about April, 1942. Since then the traditional unity of purpose, organized effort and combined action of the heroic founders, and the perpetuation of the music, art and literature of Texas have not been harmoniously fostered. Discord, disunity, disorganization and threatened dissolution are the regrettable successors. Personalities have taken the place of principles. While all profess loyalty to the laudable purposes of their foundation and have attempted to adjust the differences of personality for the common good, words of composition and agreement have failed. The desirable is unattainable through failure of appropriate harmonious expression. Virgil, describing the frustrated shades who sought Elysium, said: " *Tendebantque manus ripae ulterioris amore. Vox incassum frustratur hiantes.*" (" They stretched out their hands in longing for the farther shore, their mouths open, but no cry comes from them.") There the situation and object were beyond control. Here women of intelligence, free will, the expressed desire to act for the good of their native State and the ability to control the situation are permitting it to dominate them and frustrate their achievement of the objects they desire.

The two big questions here are those which so often constitute the breaking factors in the organized strength of membership associations, viz., legality of notice of meeting, and whether a legal quorum was present for election of officers. Control of rather than good of organization is, as usual, the real issue. The Texas Club was organized under the Membership Corporations Law and has a duly adopted constitution and by-laws. Article IV of the by-laws provides that the regular May meeting shall be the annual meeting and, in even years, both annual meeting and election of officers. Article V provides a quorum at all meetings shall be one fourth of the active membership when thirty or more, as determined by the number of active members at the close of the preceding

regular December meeting. This by-law continued and made provision that when less than thirty, "the quorum shall be ....." The blank indicates oversight in the drafting or in the process of adoption. The result is no provision where, as here, the membership becomes reduced to less than thirty members. Article X provides: "The rules contained in Roberts' Rules of Order (revised) shall govern the meetings in all cases to which they are applicable and in which they are not inconsistent with the Constitution and By Laws of this Club."

The common-law rule is that a quorum of any body of an indefinite number, for purposes of elections and voting upon questions requiring the sanction of the members, consists of those who assemble at any meeting regularly called and warned although they may be a minority of the whole number; and a majority of those present may elect unless there be a statute to the contrary (10 Cyc., Corporations, p. 329). In New York there is such a statute. Section 20 of the Membership Corporations Law provides that the by-law may provide the number which may constitute a quorum within certain limits, namely, not less than one third, but if that be nine or more, then not less than nine. Robert's Rules of Order, Revised (§ 64, p. 258), provides a quorum is a majority of those who attend a meeting regularly called.

Petitioner claims the election meeting was not regularly called and the members not duly warned, as the notice of meeting stated it would be held on May 5, 1943, at room 311 (but the election was held at suite 1911–14), the Hotel Victoria, Seventh Avenue and 51st Street, New York City, in the evening. A notice was posted at room 311 that the meeting was moved to suite 1911–14, and it is not shown any of the petitioner's group were prejudiced, as it seems they all attended the meeting. Nor is it shown that any other member who attended was misled or deprived of a vote by the change of location of the meeting room.

Petitioner also charges persons were allowed to vote who were either not members or, if so, not in good standing. As no proof thereof is submitted, the charge is not sustained. In addition, petitioner charges that at a meeting of the board of directors on April 6, 1942, the duly elected president and corresponding secretary resigned and no longer held office when they signed and sent out the notice of annual and election meeting for May 5th. The proof does not sustain this charge. At most, it is shown that the president and corresponding secre-

tary stated they would resign if the constant bickering did not cease. This was merely a threatened offer and not a tender of resignation. It follows that the president and corresponding secretary were within their rights in exercising the functions of their respective offices.

In view of the foregoing, there was no warrant for others, acting as president or vice-president and corresponding secretary, to call the purported afternoon meeting and election of May 5, 1943, which petitioner relies upon. It must be held that whatever was done at such meeting was illegal. It must also be held that the election meeting at the Victoria Hotel was duly and regularly called and the members duly warned thereof. It is conceded the membership has dwindled down to less than thirty (twenty being the claim of petitioner), and that at least nine members were present and voted. It follows that the election held at such meeting was valid and the officers selected were duly elected and are warranted in exercising the functions and performing the duties of their respective offices. (See *Matter of New York Electrical Workers' Union* v. *Sullivan,* 122 App. Div. 764.)

The petition is accordingly dismissed on the merits. No costs.

(Decision on application for reargument, June 30, 1943.)

Application for reargument on the ground that the affidavits raise an issue of fact as to resignation. Petitioner has the burden of proof. The petition states: " Mrs. Baker (President) resigned, due to the resignation and absence of its (nominating committee) chairman, Ethelyn ' d'Esternaux, although four members of said nominating committee were present at said meeting "; and " the election meeting was illegal for the following reasons: that notice of the proposed meeting was sent by Helga Baker and Ethelyn d'Esternaux, who, by reason of their resignation as President and Corresponding Secretary, * * * no longer had any legal authority whatsoever * * * to call said meeting".

The petition was verified but was not accompanied by any affidavit supporting its allegations.

The answering affidavits, while containing much argumentative assertion, stated evidentiary facts showing the president and secretary did not resign. Petitioner then served and filed " reply " affidavits, which were in reality supplementary to the petition. Among them is an affidavit by Mrs. Havender, which states; " Mrs, d'Esternaux * * * in anger * * *

rose in high dudgeon and resigned as a member of the club and resigned as well for her daughter and rushed out of the room. Mrs. Baker then said ' If the Countess resigns, I am going to resign too '. About twenty minutes after * * * she (Mrs. d'Esternaux) returned with her daughter, waving a receipt showing that she had paid her dues * * * and insisted that she and her daughter had both already resigned, whereupon they again left the room. Mrs. Baker then stood up and insisted upon her resignation being accepted and insisted on Mrs. McLendon assuming the chair.''

Another affidavit is by Pearl J. Gallagher, of which the relevant part is '' I was not present at the meeting * * * '' (at which petitioner asserts the resignations occurred). Another affidavit by Mrs. McLendon states: '' I beg leave to state to the court that there is no question that Mrs. Baker, the ' Countess ' (Mrs. d'Esternaux), and her daughter all resigned as members and officers * * * at the meeting of April 6, 1942.'' Another affidavit, one by Margaret Swertz, states she was not present at the meeting at which petitioner asserts the resignation took place. The last affidavit is by Harriet Foster, who states: '' I again repeat and reiterate that Mrs. Baker, the ' Countess ', and her daughter resigned as officers and members * * *.''

It is noted the above statements are conclusory and not evidentiary. As they were offered to prove the allegations of the petition, which were disproved by the answering affidavits, I am convinced the original disposition was correct. Application for reargument denied.