JUSTICE WARNER
delivered the Opinion of the Court.
¶1 The Respondents, members of the print and television media, filed a complaint against Appellant Richard A. Crofts in the First Judicial District Court, Lewis and Clark County. The complaint alleged that meetings between Crofts and other employees of Montana’s University System were subject to Montana’s open meeting laws. Crofts and the Respondents filed cross-motions for summary judgment. The District Court granted the Respondents’ summary judgment motion, and awarded the Respondents their attorneys’ fees and costs. Crofts appeals. We affirm in part and reverse in part the judgment of the *196 District Court.
¶2 We restate the issues on appeal as follows:
¶3 1. Did the District Court err when it concluded that meetings between senior employees of the University System were subject to Article II, Section 9, of the Montana Constitution and Montana’s open meeting laws?
¶4 2. Did the District Court correctly award the Respondents their attorneys’ fees?
FACTUAL AND PROCEDURAL BACKGROUND
¶5 Montana’s University System is a public education system supervised and controlled by the Board of Regents of Higher Education (the Board of Regents). Art. X, Sec. 9, Mont. Const.; § 20-25-301, MCA (2001); Kottel v. State, 2002 MT 278, ¶ 5, 312 Mont. 387, ¶ 5, 60 P.3d 403, ¶ 5. One of the responsibilities of the Board of Regents is to hire the Commissioner of Higher Education, who serves as the chief executive officer of the University System. The Board of Regents also prescribes the Commissioner’s official duties. Art. X, Sec. 9(c), Mont. Const. One of the Commissioner’s official duties is to act as the person through whom all matters are presented to the Board of Regents, including reports, recommendations and suggestions from the different units of the University System.
¶6 At all times relevant to the instant case, Crofts was Montana’s Commissioner of Higher Education. During the period between June 30,1999, and December 7, 2001, Crofts held fourteen meetings with a group of upper-level employees of the University System, such as University presidents and chancellors. For its first twelve meetings, this group referred to itself in its agendas as the Policy Committee. Then, the Committee’s name was changed to the Senior Management Group. The meetings were called by Crofts to discuss issues directly related to the operation of the University System. Crofts also used the meetings to seek input from Committee members on proposed actions within the realm of his authority. The various members of the Policy Committee attended the meetings in their official capacity as upper-level University employees and were compensated for their attendance with public funds.
¶7 The fifteenth meeting between Crofts and the Policy Committee was scheduled for February 1, 2002. However, before such meeting could commence, a reporter for the Associated Press entered the meeting room and requested to observe, and report on, the meeting. Crofts declined this request. The reporter refused to leave. Crofts then *197 canceled the meeting.
¶8 On February 8, 2002, the Respondents filed a complaint against Crofts, in his official capacity as Montana’s Commissioner of Higher Education. The complaint sought a declaration that the meetings between Crofts and the Policy Committee were subject to Montana’s open meeting laws. The complaint also sought an order enjoining Crofts from excluding the public from such meetings.
¶9 Crofts moved for summary judgment on the Respondents’ complaint on August 9,2002. The Respondents filed a cross-motion for summary judgment that same day. The District Court conducted a hearing on the motions on November 13, 2002. On January 3, 2003, the District Court issued its order, granting the Respondents’ summary judgment motion, and denying Crofts’ summary judgment motion.
¶10 On January 9, 2003, the Respondents filed a motion requesting that they be awarded attorneys’ fees. The District Court conducted a hearing on the motion for attorneys’ fees on February 25,2003. Crofts filed a notice of appeal on March 11, 2003. On April 3, 2003, the District Court granted the Respondents their attorneys’ fees and costs. Crofts then filed an amended notice of appeal on April 7, 2003.
STANDARD OF REVIEW
¶11 Our review of a district court’s grant or denial of a motion for summary judgment is de novo. Hickey v. Baker School Dist. No. 12, 2002 MT 322, ¶ 12, 313 Mont. 162, ¶ 12, 60 P.3d 966, ¶ 12. Therefore, we apply the same Rule 56, M.R.Civ.P., criteria as applied by the district court. Hickey, ¶ 12. Pursuant to Rule 56, M.R.Civ.P.:
The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.
Hickey, ¶ 12.
¶12 On appeal, Crofts contests neither the fact that the Respondents incurred attorneys’ fees nor that the amount fixed by the District Court was reasonable. This Court generally reviews a district court’s award of attorneys’ fees for an abuse of discretion. In re Marriage of Steinbeisser, 2002 MT 309, ¶ 18, 313 Mont. 74, ¶ 18, 60 P.3d 441, ¶ 18. *198 However, in this case, Crofts’ challenge of the District Court’s award of attorneys’ fees is purely legal. That is, Crofts alleges that because the District Court failed to make a ruling on the Respondents’ motion for attorneys’ fees within 60 days, the motion was deemed to be denied. Thus, because there are no factual issues concerning the award of attorneys’ fees, the question of whether the award of attorneys fees’ was proper is one of law. We review a district court’s conclusions of law to determine whether the court’s interpretation of the law is correct. Brumit v. Lewis, 2002 MT 346, ¶ 12, 313 Mont. 332, ¶ 12, 61 P.3d 138, ¶ 12.
DISCUSSION ISSUE 1
¶13 Did the District Court err when it concluded that meetings between senior employees of the University System were subject to Article II, Section 9, of the Montana Constitution and Montana’s open meeting laws?
¶14 Crofts maintains that the District Court erred when it concluded that the Policy Committee’s meetings were subject to Montana’s open meeting laws. The Respondents counter that the District Court’s decision was proper, as Article II, Section 9, of the Montana Constitution and the open meeting laws apply to the type of meetings at issue in this case.
¶15 Article II, Section 9, of the Montana Constitution provides:
No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.
The above provision, commonly referred to as the “Right to Know” provision of the Montana Constitution, has been implemented primarily through Montana’s open meeting laws, located at §§ 2-3-201 through -221, MCA (2001). Common Cause v. Statutory Committee (1994), 263 Mont. 324, 329, 868 P.2d 604, 607. The legislature created the open meeting laws with the intent that the deliberations of the public agencies of this State be conducted openly. Section 2-3-201, MCA (2001). To that end, the provisions of the open meeting laws are to be liberally construed. Section 2-3-201, MCA (2001).
¶16 Section 2-3-203(1), MCA (2001), which addresses the types of meetings subject to the open meeting laws, provides:
All meetings of public or governmental bodies, boards, bureaus, *199 commissions, agencies of the state, or any political subdivision of the state or organizations or agencies supported in whole or in part by public funds or expending public funds must be open to the public[.]
¶17 We have previously determined that, in the context of § 2-3-203(1), MCA (2001), the phrase “public or governmental bodies” means a group of individuals organized for a governmental or public purpose. Common Cause, 263 Mont. at 330, 868 P.2d at 608; Bryan v. District, 2002 MT 264, ¶ 25, 312 Mont. 257, ¶ 25, 60 P.3d 381, ¶ 25. Therefore, pursuant to § 2-3-203(1), MCA (2001), any group of individuals organized for a governmental or public purpose must allow their meetings to be open to the public.
¶18 In past cases, this Court has concluded that various types of committees created by government entities to perform some type of function were public or governmental bodies required to open their meetings to the public. See Common Cause, 263 Mont. at 330, 868 P.2d at 608 (in which we held that a committee created by statute to assist in the governor’s selection of a Commissioner was a public or governmental body subject to the open meeting laws); Bryan, ¶ 26 (in which we held that a committee created by a school district to research a proposition and submit a recommendation to the school board was a public or governmental body subject to the “Right to Know” provision of the Montana Constitution); and Great Falls Tribune Co., Inc. v. Day, 1998 MT 133, ¶ 18, 289 Mont. 155, ¶ 18, 959 P.2d 508, ¶ 18 (in which we held that a committee created by the Department of Corrections to screen proposals for the construction of a private prison was a public body subject to the “Right to Know” provision of the Montana Constitution).
¶19 In this case, while the Policy Committee was not formally created by a government entity to accomplish a specific function, we agree with the District Court that the committee in question, whether it was called the Policy Committee or the Senior Management Group, was organized to serve a public purpose. The Policy Committee met fourteen times over two and a half years to discuss matters directly related to the governance of the University System. The Committee deliberated on issues relating to, inter alia: (1) policy changes; (2) tuition and fee changes; (3) budgeting issues; (4) contractual issues; (5) employee salaries; and (6) legislative initiatives. The Policy Committee also advised Crofts on matters related to his duties as the Commissioner of Higher Education. How the University System conducts its business, both academically and administratively, and the *200 job-related actions of the Commissioner of Higher Education, are public matters. Thus, the Policy Committee’s meetings brought together public officials for an undeniably public purpose.
¶20 Crofts admits that the meetings in question are occasions where public officials gather for a public purpose. However, he argues that because the Policy Committee has no definite membership, no specific charter or goal to accomplish, is not created by a specific order of either the Board of Regents or Crofts, and neither votes on propositions nor takes any direct action, it is not a public body as contemplated by Article II, Section 9, of the Montana Constitution and the open meeting laws.
¶21 The determination of whether advisory committees are public bodies subject to the open meeting laws has been recognized as presenting special problems for courts. Bradbury v. Shaw (N. H. 1976), 360 A.2d 123, 125 (superceded by statute). Moreover, the legislation enacted by the different states on this issue is so varied that decisions from other jurisdictions are of little help in resolving the instant question. Tribune Pub. Co. v. Curators of University of Missouri (Mo. 1983), 661 S.W.2d 575, 583. Many factors have been considered in deciding if a particular committee’s meetings were required to be open to the public. Additionally, each situation must be examined in the context of the applicable constitutional and statutory provisions. Ann Taylor Schwing, Open Meeting Laws 2d § 4.42, at 89, § 4.44, at 94 (2000).
¶22 Consideration of Montana’s particular constitutional and statutory schemes leads us to the conclusion that Crofts’ interpretation of what constitutes a public body is too narrow. We conclude that under Montana’s constitution and statutes, which must be liberally interpreted in favor of openness, factors to consider when determining if a particular committee’s meetings are required to be open to the public include: (1) whether the committee’s members are public employees acting in their official capacity; (2) whether the meetings are paid for with public funds; (3) the frequency of the meetings; (4) whether the committee deliberates rather than simply gathers facts and reports; (5) whether the deliberations concern matters of policy rather than merely ministerial or administrative functions; (6) whether the committee’s members have executive authority and experience; and (7) the result of the meetings. This list of factors is not exhaustive, and each factor will not necessarily be present in every instance of a meeting that must be open to the public. A proper consideration of these factors does not mandate that every internal *201 department meeting meet the requirements of the open meeting laws. Meetings where staff report the result of fact gathering efforts would not necessarily be public. Deliberation upon those facts that have been gathered and reported, and the process of reaching decisions would be open to public scrutiny. The guiding principles are those contained in the constitution; that is “no person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions,” and “all meetings of public or governmental bodies ... supported in whole or in part by public funds ... must be open to the public.” Art. II, Sec. 9, Mont. Const.; § 2-3-203(1), MCA (2001).
¶23 The Policy Committee is not merely a fact finding body, nor is it an ad hoc group which came together to consider a specific matter or to gather facts concerning a particular issue. It is a committee that was created and continued by Crofts, and it is not unlike the committee that the Director of the Department of Corrections appointed to advise him in Day, which was found to be a public body. Day, ¶¶ 5,18. As was the case in Day, the Policy Committee was not appointed pursuant to a statute or regulation, but by the head of a department of the State of Montana to tender advice and make recommendations. See Day, ¶ 5.
¶24 The Policy Committee came together at times that were noticed, and agendas were prepared. Moreover, while the record does not contain minutes of the Policy Committee’s meetings, the agendas make it clear that the matters deliberated were somehow memorialized, as such matters were remembered, and re-discussed at successive meetings. The Policy Committee’s meetings required substantial time, inconvenience and travel by the attendees, all of whom were expected to attend. Further, the various costs of conducting the meetings were paid with public funds.
¶25 A review of the record reveals that the District Court was correct that the meetings of the Policy Committee were more than simply staff meetings. The meetings in question were held for much more than mere fact gathering and reporting. Crofts used these meetings to seek input, opinions, and guidance from the Committee regarding the policy decisions he was required to make as Montana’s Commissioner of Higher Education.
¶26 As we noted above, the Policy Committee was made up of upper-level employees of Montana’s University System. These upper-level employees did not convene for the purpose of delivering the results of factual investigations to Crofts. Rather, the agendas indicate that the Policy Committee deliberated, discussed, and debated a wide variety *202 of issues. The Committee then applied their considerable knowledge to the issues, and advised Crofts on how he should proceed. The District Court found that these meetings: “included tuition and fees, student financial planning, course fees, distance education fees, athletic funding, salaries, Indian education planning, diversity, writing proficiency, credit cap, students called to active duty, and reciprocal campus services.” It then went on to conclude: “All of these matters are important to the public and in particular to prospective students and employees of the University System.”
¶27 In addition, the record reveals that the Committee deliberated on legislative strategy; the extent to which the Board of Regents should be involved in campus planning; guidelines for determining what percentage of the cost of a college education should be covered by tuition; budget planning, including consideration of salary increases; tuition and fees; development of information technology policies; the fiscal and political implications of a retired school district administrator teaching at a unit of the University while drawing retirement pay; whether to use interest income arising out of nonresident tuition for scholarships for non-resident students; dental hygiene pre-admission course requirements and how to attract students to the program; the implementation of writing proficiency standards; the policy concerning continuous enrollment of transfer students; and policies concerning the transfer of class credits. The facts had been gathered when the members arrived at the meeting and once there they deliberated positions and solutions. The function performed by the committee, as revealed by the record, was to make decisions on how to proceed.
¶28 Clearly, the Policy Committee met to deliberate on matters of substance. Accordingly, we hold that the Policy Committee is a public body within the meaning of Article II, Section 9, of the Montana Constitution and Montana’s open meeting laws.
¶29 Crofts argues that even if the Policy Committee is deemed to be a public body, it does not hold “meetings,” as contemplated in the open meeting laws, because the Committee’s membership is not fixed, no number of members were required to attend to constitute a quorum, and neither direct action nor votes were taken at its meetings.
¶30 Section 2-3-202, MCA (2001), defines the term “meeting” as:
[T]he convening of a quorum of the constituent membership of a public agency or association described in 2-3-203, whether corporal or by means of electronic equipment, to hear, discuss, or act upon a matter over which the agency has supervision, control, *203 jurisdiction, or advisory power.
Nothing in the plain language of § 2-3-202, MCA (2001), requires that a meeting produce some particular result or action, or that a vote on something be taken. All that is required is that a quorum of the membership convene to conduct its public business.
¶31 In this case, the parties stipulated that each person who attended a meeting of the Policy Committee was invited because he or she was an employee of the University System that held a responsible position. It was also agreed that there were no established rules of procedure and no quorum requirements. Thus, a quorum of the Policy Committee consisted of the members who were in attendance at any particular meeting. The common law rule is that a quorum of any body of an indefinite number consists of those who assemble at any meeting thereof. Application of Havender (N.Y.1943), 181 Misc. 989, 992. There being no statute, rule, or precedent to the contrary, this rule of common law applies in this instance to our interpretation of § 2-3-202, MCA (2001). Section 1-1-108, MCA (2001). Moreover, our constitution mandates that the deliberations of public bodies be open, which is more than a simple requirement that only the final voting be done in public. Devices such as not fixing a specific membership of a body, not adopting formal rules, not keeping minutes in violation of § 2-3-212, MCA, and not requiring formal votes, must not be allowed to defeat the constitutional and statutory provisions which require that the public’s business be openly conducted. Therefore, we hold that the meetings of the Policy Committee were meetings within the meaning of § 2-3-202, MCA (2001).
¶32 Article II, Section 9, of the Montana Constitution provides that no person shall be deprived of the right to observe the deliberations of public bodies. Government operates most effectively, most reliably, and is most accountable when it is subject to public scrutiny. Day, ¶ 34. The Policy Committee is a public body which deliberates on substantive issues that are the public’s business. Accordingly, we hold that the meetings of the Policy Committee are subject to the requirements of Montana’s open meeting laws and Article II, Section 9, of the Montana Constitution.
ISSUE 2
¶33 Did the District Court correctly award the Respondents their attorneys’ fees?
¶34 The District Court granted the Respondents’ motion for summary judgment on January 3, 2003. On January 8, 2003, the Respondents *204 filed a notice of entry of judgment, and on January 9, 2003, they filed a motion requesting that the District Court award them attorneys’ fees. Crofts objected to the Respondents’ motion for attorneys’ fees. The District Court conducted a hearing on this matter on February 25, 2003. The District Court then issued an order granting the Respondents their attorneys’ fees and costs on April 3, 2003.
¶35 On appeal, Crofts contends that because the District Court failed to make a ruling on the Respondents’ motion for attorneys’ fees within 60 days, the motion was deemed denied. Therefore, Crofts alleges the District Court did not have jurisdiction to award the Respondents their attorneys’ fees on April 3, 2003. We agree.
¶36 The District Court’s order granting the Respondents’ motion for summary judgment was a final determination of the rights of the parties to this action, and is the subject of the instant appeal. See Rule 54(a), M.R.Civ.P. The Respondents treated it as such when they filed their notice of entry of judgment on January 8, 2003. A motion for attorneys’ fees filed after entry of a judgment is treated as a motion to alter or amend a judgment. In re Marriage of McDonald (1979), 183 Mont. 312, 314, 599 P.2d 356, 358. A motion to alter or amend a judgment must be ruled on within 60 days or it is deemed denied. Rule 59(g), M.R.Civ.P.
¶37 In this case, the Respondents filed their motion for attorneys’ fees on January 9, 2003. Pursuant to Rule 59(g), M.R.Civ.P., the District Court then had until March 10, 2003, to render a decision regarding such motion. The District Court failed to do so. Rule 59, M.R.Civ.P., contains a mandatory jurisdictional time limitation, to which this Court strictly adheres. Johnson v. Eagles Lodge Aerie (1997), 284 Mont. 474, 480, 945 P.2d 62, 65. Thus, the motion was deemed denied on March 11, 2003, and the District Court had no jurisdiction to enter its April 3,2003, order awarding the Respondents their attorneys’ fees. Accordingly, the District Court’s order of April 3, 2003, must be reversed.
¶38 For the foregoing reasons, the judgment of the District Court requiring the meetings of the Policy Committee to be open to the public is affirmed, and its award of attorneys’ fees to the Respondents is reversed.
JUSTICES NELSON, COTTER, REGNIER and RICE concur.