# FILED

January 9 2014



*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0442

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 5

THE BOULDER MONITOR,

       Plaintiff and Appellee,

  v.

JEFFERSON HIGH SCHOOL DISTRICT NO. 1,

       Defendant and Appellant.

APPEAL FROM:   District Court of the Fifth Judicial District,
In and For the County of Jefferson, Cause No. DV-2012-52
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         David C. Dalthorp, Gough, Shanahan, Johnson & Waterman, PLLP,
         Helena, Montana

      For Appellee:

         David K. W. Wilson, Jr., Morrison, Sherwood, Wilson & Deola PLLP,
         Helena, Montana

Submitted on Briefs:  November 20, 2013
Decided:  January 9, 2014

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    The Jefferson High School District No. 1 (the District) appeals from the District Court's Order filed March 27, 2013, granting summary judgment to the Boulder Monitor (Monitor).  We reverse.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2    The Jefferson County High School Board established a budget subcommittee, composed of three members of the full Board.  The subcommittee's task was to consider budget issues and to report recommendations to the full Board.  The Board met in a regular meeting on July 10, 2012, and discussed a number of issues, including several personnel positions.  The Board reviewed four applicants for a principal position, and asked the budget subcommittee to meet on July 13, 2012 "to see if there is any significant savings that could be identified" regarding the salary for the position.

¶3    In addition to the discussion at the July 10 Board meeting as noted in the minutes of that meeting, the Board gave public notice of the July 13, 2012 meeting of the subcommittee.  The notice indicated that the subcommittee would discuss the 2012-2013 school district budget, and noted that:  "No decisions are made by a subcommittee of the Jefferson High School Board of Trustees unless authorized by action of a majority of the membership of the board in a regular meeting."

¶4    The Boulder Monitor is a weekly newspaper covering Jefferson County and its county seat, Boulder.  The Monitor, and more specifically its publisher Jan Anderson, claims that its policy is to attend each meeting of the full School Board and that it has

2

done so for several years. The Monitor was aware of the context of the budget subcommittee meeting, having attended the July 10 regular meeting of the full Board. The Monitor admits that it knew about the notice of the July 13 subcommittee meeting but decided not to send a reporter to cover it because it was not noticed as a meeting of the full School Board.

¶5 Pursuant to the discussion and directive at the regular Board meeting July 10, the three designated members of the subcommittee met on July 13. A fourth member of the School Board who was not a designated member of the budget subcommittee checked to insure that three Board members were present to participate. Her affidavit indicated that she was concerned that one of the subcommittee members had recent surgery and might not be able to attend. All three subcommittee members attended, so the fourth School Board member sat in the audience to observe the discussions about the 2012-2013 budget. The subcommittee discussed the salary level to allocate to a principal position and to a part-time athletic director position. The fourth Board member asked some questions during the discussion. The budget subcommittee, by consensus of its three members, decided to recommend to the School Board a salary of $55,000 for the principal position and a salary of $10,000 for the part-time athletic director position. After the subcommittee set the salary levels, there was a discussion of whether or not full benefits would also need to be paid. The school superintendent was present, and he opined that two of the four applicants for the open principal position would likely not be interested at the salary level recommended by the subcommittee.

3

¶6     One of the subcommittee members took notes of the discussion and intended to send her notes to the full School Board as a report of the subcommittee's recommendations. She sent a draft of her notes of the meeting to each person who attended, including the fourth board member. The fourth Board member sent back some suggested revisions. The full School Board considered and acted upon the subcommittee's recommendations at its next regular meeting.

¶7     Jan Anderson attended the next scheduled meeting of the full School Board. She determined, based upon what she heard there and upon the notes of the budget subcommittee meeting, that the subcommittee meeting had actually been a meeting of the full School Board. Anderson concluded that the presence of the fourth board member meant that a quorum of the School Board had met. Anderson further determined that the subcommittee had done more than discuss the 2012-2013 budget, and had acted in some way to eliminate two of the candidates for the principal position. Anderson determined that the notice of the subcommittee meeting had not disclosed that it would be a meeting of the full School Board and that the notice had not disclosed that the subcommittee would take action to reduce the number of candidates from four to two.

¶8     The Monitor sued the District contending that the meeting of the budget subcommittee violated the open meeting and public participation requirements of Montana law, Title 2, chapter 3, MCA. The complaint alleged that there was a quorum of the School Board present at the subcommittee meeting on July 13; that the meeting discussed "personnel matters" in addition to the 2012-2013 budget; that all four Board members present participated in the discussion; and that the public notice of the

4

subcommittee meeting was inadequate. The complaint requested a declaration that the Board had violated the open meeting and public participation requirements of Montana law; requested that if any decision was made at the July 13 meeting, it be voided; and requested an injunction against the School Board's conducting any other official business until its members completed a course in the open meeting and public participation requirements of Montana law. The Monitor also requested that the School District be ordered to pay its attorney fees.

¶9 The parties conducted limited discovery and both sides filed motions for summary judgment. The District Court entered an Order filed March 27, 2013, granting summary judgment to the Monitor and awarding it attorney fees as the prevailing party. The District Court granted summary judgment to the Monitor based upon its determination that the "critical facts are undisputed." The critical facts noted in the District Court's Order were that a quorum of the School Board convened at the budget subcommittee meeting on July 13, 2012; that the members present at that meeting heard and discussed school business; that the members present "discussed at least four applications for an administrative position"; that the members present acted to reduce the "roster of several candidates" for the principal position; that the fourth School Board member was "clearly involved in the conduct of the school business"; and that the School Board failed to give notice that these actions would be taken.

¶10 The District Court, based upon its conclusion that these were undisputed facts, granted summary judgment to the Monitor. The only relief the District Court granted was a declaration that the School Board had violated the open meeting and public

5

participation requirements of Montana law at the July 13, 2012 meeting, and a determination that the Monitor was entitled to attorney fees. The issue on appeal is whether the District Court properly granted summary judgment to the Monitor based upon the conclusion that the School Board violated Montana law in the manner in which the July 13, 2012 budget subcommittee meeting was conducted.

## STANDARD OF REVIEW

¶11 Summary judgment is governed by M. R. Civ. P. 56. That Rule provides that a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party must demonstrate the absence of any genuine issues of material fact and its entitlement to judgment as a matter of law. *Hiebert v. Cascade County*, 2002 MT 233, ¶ 20, 311 Mont. 471, 56 P.3d 848. If the moving party satisfies this burden then the opposing party must present material and substantial evidence to demonstrate that there are genuine issues of material fact, or that it is entitled to judgment as a matter of law. *Hiebert*, ¶ 21. All reasonable inferences that might be drawn from offered evidence should be drawn in favor of the party opposing summary judgment. *Montana Metal Bldgs. v. Shapiro*, 283 Mont. 471, 474, 942 P.2d 694, 696 (1997).

¶12 On appeal this Court reviews decisions on summary judgment de novo, applying the same evaluation as the district court under M. R. Civ. P. 56 and determining whether

the district court's conclusions of law are correct. *Smart v. Judicial Standards Comm.,* 2002 MT 148, ¶¶ 9-10, 310 Mont. 295, 50 P.3d 150.

## DISCUSSION

¶13 In Montana the public's constitutional "right to know" guarantees that "[n]o person shall be deprived of the right . . . to observe the deliberations of all public bodies or agencies of state government and its subdivisions. . . . ." Mont. Const. art. II, § 9. This mandate is implemented through the open meeting laws codified at §§ 2-3-201, et. seq., MCA. *Common Cause of Montana v. Statutory Committee*, 263 Mont. 324, 329, 868 P.2d 604, 607 (1994). Public bodies in Montana "exist to aid in the conduct of the peoples' business" and it is the intent of the statutes that the "actions and deliberations of all public agencies shall be conducted openly" and "[a]ll meetings of public or governmental bodies . . . must be open to the public." Section 2-3-201, MCA. A "meeting" is "the convening of a quorum[1] of the constituent membership of a public agency . . . to hear, discuss, or act upon a matter over which the agency has supervision, control, jurisdiction, or advisory power." Section 2-3-202, MCA. The public is entitled to notice of public meetings and the opportunity to participate. Sections 2-3-103 and -104, MCA. These constitutional and statutory provisions "must be liberally interpreted in favor of openness." *Associated Press v. Crofts*, 2004 MT 120, ¶ 22, 321 Mont. 193, 89 P.3d 971.

---

[1] A quorum of a school board is a majority of the trustees' membership. Section 20-3-322(4), MCA.

¶14    The parties do not dispute that the School Board could establish a subcommittee to discuss budget issues and then make recommendations for action to be taken by the full Board.  There is no dispute that the School Board provided public notice of the July 13, 2012 meeting of the budget subcommittee and that the Monitor got actual notice.  There is also no dispute that Monitor made its own decision not to attend the meeting called to discuss the 2012-2013 budget.  The Monitor disputes the adequacy of the notice, based upon its contention that it was a meeting of a quorum of the School Board and that it took action to eliminate candidates for a vacant principal position.

¶15    The District Court's decision to grant summary judgment to the Monitor was expressly premised upon the conclusion that the "critical facts are undisputed."  The absence of a genuine dispute as to "critical facts" or "material facts" in the language of M. R. Civ. P. 56, is the lynchpin of summary judgment.  In the present case, however, the record shows that at the time the District Court entered its Order granting summary judgment, there were genuine disputes as to the material facts the District Court relied upon.  The School District's pleadings, along with its briefs, affidavits and other materials submitted to the District Court disputed the essential facts relied upon by the District Court.

¶16    The District contended that the fourth Board member attended the subcommittee meeting in her capacity as an interested citizen.  The District disputed that the fourth Board member was involved in the meeting as a member of the Board and contended that she did not participate in reaching the subcommittee consensus that was reported to the full School Board.  The District asserted that only the designated members of the

subcommittee had the authority to consider the budget issue and report its consensus. The District disputed that a quorum of the Board met and took action and significantly disputed that the subcommittee "acted to reduce a field of four candidates to two candidates." The District contends that the subcommittee's only action after budget review was to reach a consensus on a salary level to recommend to the School Board for final action. The District maintains that the Monitor's positions on the facts are based upon a misunderstanding of what happened and upon a mis-construction of the events. Materials filed in the record by the Monitor took opposing positions on these factual points.

¶17 The District Court resolved the factual disputes and contentions between the parties in favor of the scenario posited by the Monitor. While the Monitor's factual contentions may ultimately prove out, the District Court should not have resolved factual disputes between the parties when granting summary judgment. It is settled law that it is improper for a district court to resolve factual disputes in a summary judgment proceeding. *Cole v. Flathead County*, 236 Mont. 412, 416, 771 P.2d 97, 99 (1989); *Walker v. St. Paul Fire & Marine*, 241 Mont. 256, 258-59, 786 P.2d 1157, 1159 (1990); *Mount. West Bank v. Mine & Mill Hydraulics*, 2003 MT 35, ¶ 28, 314 Mont. 248, 64 P.3d 1048; *Corporate Air v. Edwards Jet Center*, 2008 MT 283, ¶ 28, 345 Mont. 336, 190 P.3d 1111.

¶18 The District Court erred by granting summary judgment when there were genuine issues of material fact.

¶19    The District Court also incorrectly applied the law by concluding that the July 13, 2012 subcommittee meeting was a meeting of a quorum of the School Board for purposes of the open meeting statutes.   That ruling was based upon a determination that the subcommittee meeting transformed into a meeting of a quorum of the full School Board because a fourth Board member stayed during the proceedings.   The open meetings statutes apply to a "meeting," which occurs upon the "convening" of a "quorum" of the "constituent membership of a public agency."  Section 2-3-202, MCA.  The only meeting that was convened on July 13, 2012, was a noticed meeting of the three-member subcommittee tasked by the School Board to make budget recommendations regarding the salary level for an open principal position.  The only persons who convened to "hear, discuss or act upon" budget recommendations were the three designated members of the subcommittee who alone could reach a consensus to report to the full School Board.  This is consistent with § 20-3-322(4), MCA, which provides that the "business" of a school board may only be conducted at "regular meeting or a properly called special meeting" of the school board.

¶20    Nothing in the letter or spirit of the open meeting statutes prohibits a person in the position of the fourth member in this case from attending and observing a meeting of a subcommittee along with any other members of the public.  In fact, it can be argued that the better public policy would be to encourage members of public bodies to observe such events so they can be better educated and informed about matters that they will later vote on in their official capacities.  Penalizing those members and the public bodies they serve by an unwarranted application of the statute creates a difficult labyrinth for public

10

servants and threatens to turn any Saturday night at the county rodeo into a board meeting that must be noticed. We decline to formulate such strictures when none exist in the statute. *Sonsteile v. Board of Trustees*, 202 Mont. 414, 419, 658 P.2d 413, 416 (1983).

¶21 We caution that this Opinion should not be taken as an invitation for subterfuge by public bodies or their members to avoid public scrutiny and to conduct business in violation of the requirements of the open meeting statutes. We determine only that the statutes do not prohibit a member of a public body from observing a meeting of a sub-quorum subcommittee, or even asking questions during the meeting, and that doing so does not constitute the convening of a quorum. As § 2-3-202, MCA, provides, a meeting exists only when a quorum has been convened. In the present case the mere presence of the fourth Board member in the room to observe the budget subcommittee did not transform that meeting into a meeting of the full School Board.

¶22 The Monitor does not contend, and the District Court did not determine, that it was improper for the School Board to appoint a budget subcommittee and to ask it to consider and recommend a salary level for the principal position. It seems clear that it would be virtually impossible for the subcommittee to discuss the money to be allocated in a vacuum without mentioning the position that the money would be used to fill and without discussing such issues as whether or not the salary allocation would include benefits. The District contends that it was the Superintendent, at the July 13 meeting, and not the subcommittee members, who offered his opinion that the salary level selected by the subcommittee would probably not attract some of the then-current applicants for the

11

principal position. As noted above, there are contested issues of fact that must be resolved in this case and that may not be resolved on summary judgment.

¶23 The District Court improperly granted summary judgment to the Monitor and therefore also improperly granted attorney fees to the Monitor. The Order granting summary judgment is reversed and this case is remanded for further proceedings consistent with this Opinion.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE

Justice Laurie McKinnon, dissenting.

¶24 I dissent from the Court's decision because the undisputed material facts establish that the fourth School Board member's attendance and participation in the July 13, 2012 meeting rendered it a meeting of the full School Board, regardless of whether the fourth School Board member (Patricia Lewis) believed she was attending the meeting as a "private citizen."[1]

¶25 Article II, Section 9 of the Montana Constitution provides:

No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state

---

[1] It should be noted preliminarily that neither the District nor the Monitor disputes that the Budget Subcommittee meeting was itself subject to the open-meeting laws.

> government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

This provision, commonly referred to as the "right to know," has been implemented and protected by the Legislature through the open-meeting laws, codified at Title 2, chapter 3, part 2, MCA. We recognized in *Great Falls Tribune Co. v. Great Falls Public Schools*, 255 Mont. 125, 841 P.2d 502 (1992), that Article II, Section 9 "is unambiguous and capable of interpretation from the language of the provision alone." 255 Mont. at 129, 841 P.2d at 504; *accord Great Falls Trib. Co. v. Day*, 1998 MT 133, ¶ 30, 289 Mont. 155, 959 P.2d 508. In *Associated Press v. Board of Public Education*, 246 Mont. 386, 804 P.2d 376 (1991), we observed that since Article II, Section 9 "is unique, clear and unequivocal," we are "precluded, by general principles of constitutional construction, from resorting to extrinsic methods of interpretation." 246 Mont. at 391, 804 P.2d at 379; *accord Great Falls Pub. Schs.*, 255 Mont. at 129, 841 P.2d at 504; *Day*, ¶ 30.

¶26 The Legislature's expressed intent is that public boards and agencies in this State "exist to aid in the conduct of the peoples' business," that the people "do not wish to abdicate their sovereignty to the agencies which serve them," and, therefore, that "actions and deliberations of all public agencies shall be conducted openly." Section 2-3-201, MCA. "Toward these ends, the provisions of the [open-meeting laws] shall be liberally construed." Section 2-3-201, MCA; *accord Common Cause of Mont. v. Statutory Comm. to Nominate Candidates*, 263 Mont. 324, 329, 868 P.2d 604, 607 (1994) ("The legislature's expressed intent that the open meeting laws be liberally construed . . . guides our interpretation of these statutes.").

13

¶27    "All *meetings* of public or governmental bodies, boards, bureaus, commissions, agencies of the state, or any political subdivision of the state or organizations or agencies supported in whole or in part by public funds or expending public funds, including the supreme court, must be open to the public."  Section 2-3-203(1), MCA (emphasis added). The term "meeting" is defined as

> the convening of a quorum of the constituent membership of a public agency or association described in 2-3-203, whether corporal or by means of electronic equipment, to hear, discuss, or act upon a matter over which the agency has supervision, control, jurisdiction, or advisory power.

Section 2-3-202, MCA.  We have previously established that "[n]othing in the plain language of § 2-3-202, MCA . . . , requires that a meeting produce some particular result or action, or that a vote on something be taken.  *All that is required is that a quorum of the membership convene[s] to conduct its public business.*"  *Associated Press v. Crofts*, 2004 MT 120, ¶ 30, 321 Mont. 193, 89 P.3d 971 (emphasis added).  The constitutional guarantee extends to all "deliberations" of a public body.  Mont. Const. art. II, § 9.

¶28    To permit and encourage the public to participate in agency decisions, each agency is required to develop procedures that "ensure adequate notice and assist public participation before a final agency action is taken that is of significant interest to the public."  Section 2-3-103(1)(a), MCA.  Montana law thus requires that public notice be given of meetings that are subject to the requirements of the open-meeting laws.  We have acknowledged that "[i]t is difficult to envision an open meeting held without public notice that still accomplishes the legislative purpose of the Montana 'open meeting' statutes.  Without public notice, an open meeting is open in theory only, not in practice.

14

This type of clandestine meeting violates the spirit and the letter of the Montana Open Meeting Law." *Bd. of Trustees v. Bd. of Co. Commrs.*, 186 Mont. 148, 155-56, 606 P.2d 1069, 1073 (1980).

¶29 In this case, while the Court identifies several disputed facts as a reason to reverse the District Court's order granting summary judgment, Opinion, ¶ 16, it is my view that the *material* facts are undisputed and that the District Court correctly focused on those undisputed material facts in analyzing the alleged open-meeting violation. The undisputed facts material to Article II, Section 9 and §§ 2-3-201, -202, and -203(1), MCA, establish that the Budget Subcommittee of the School Board held a meeting on July 13, 2012, to discuss the 2012-2013 school budget. The meeting was noticed up as a meeting of the Budget Subcommittee, not the School Board. Present at the meeting, however, were the three members of the Budget Subcommittee plus a fourth School Board member who was not on the subcommittee. A "quorum" of the School Board is defined as four or more members of the School Board. Ms. Lewis, the fourth member of the School Board and the only board member not on the Budget Subcommittee, asked questions during the meeting about the budget process. Following the meeting, Lewis, via email, made certain changes or clarifications to the minutes/notes of the July 13, 2012 meeting. Lewis's changes were subsequently circulated among the four School Board members—the quorum—in attendance at the July 13, 2012 meeting.[2]

---

[2] I note that this act alone of making substantive changes to the minutes/notes arguably constituted a violation of § 2-3-202, MCA, as it was a discussion, by "electronic" means, of a matter relating to School Board business.

15

¶30 Based on the foregoing undisputed facts, "a quorum of the constituent membership of a public agency," § 2-3-202, MCA—i.e., four members of the School Board—was present on July 13, 2012. A matter over which the School Board has "supervision, control, jurisdiction, or advisory power," § 2-3-202, MCA—i.e., the school budget—was heard and discussed. There was participation by a quorum of School Board members in "hear[ing], discuss[ing], or act[ing] upon," § 2-3-202, MCA, matters within the School Board's jurisdiction. The meeting by a quorum of the School Board was not properly noticed as a School Board meeting.

¶31 These undisputed facts, in light of the "clear and unequivocal" language of our Constitution, *Associated Press*, 246 Mont. at 391, 804 P.2d at 379, establish that the meeting of July 13, 2012, did not comply with Montana's open-meeting laws. A straightforward application of the statutory provisions necessarily leads to the conclusion that a quorum of the School Board heard, discussed, and otherwise conducted school business without properly noticing the meeting as a School Board meeting. The disputed facts as to what occurred at the meeting are irrelevant, as long as business of the School Board was heard, discussed, or acted upon—as it was here.

¶32 The Court's decision today will lead government agencies down a slippery slope by raising the question of whether presence at a public meeting of the body upon which a member serves constitutes a quorum. We have previously recognized that a "quorum" of a given body consists of members who "assemble" or are "in attendance" at "any particular meeting" of the body. *Crofts*, ¶ 31. The Court muddles this rule by holding

16

that board members may assemble or be in attendance at a public meeting without constituting a quorum.

¶33 Our Constitution mandates that the deliberations of all public bodies or agencies be open. Our open-meeting laws exist to implement this constitutional guarantee. A gathering of School Board members at the county rodeo or at the local coffee shop, as the Court posits, is not necessarily impermissible under the open-meeting laws. However, a gathering of four School Board members at the rodeo or coffee shop is impermissible—as it is similarly impermissible when four members assemble at a Budget Subcommittee meeting—if they "hear, discuss, or act upon," § 2-3-202, MCA, the school budget during that gathering. We should not allow the open-meeting laws to be evaded on the ground that a member of a public body, which has assembled as defined in § 2-3-202, MCA, claims she was attending the meeting as a private citizen. I submit that Lewis's inquiries regarding the budgetary process directly related to her subsequent decision, made when she wore her "School Board member" hat, on whether to approve recommendations of the Budget Subcommittee concerning the 2012-2013 budget. Lewis's presence and inquiries clearly constituted "deliberations" of a matter which the School Board was considering and which the public was entitled, therefore, to receive proper notice of and to observe.

¶34 The Court opines that "the better policy" would be to encourage members of public bodies to attend and observe subcommittee meetings along with members of the public "so they can be better educated and informed about matters that they will later vote on in their official capacities." Opinion, ¶ 20. While such "policy" considerations

17

might be appropriate if we were articulating the substance of the right to know in the first instance, we are not in a position to do that here. The Delegates debated the competing "policy" considerations during the 1972 Constitutional Convention and struck the balance they deemed appropriate. That balance is now set forth in the Constitution and the statutes which implement the right to know. It is not this Court's prerogative to adopt what it feels is a "better" policy. The constitutional and statutory provisions are clear: When a quorum of the board convenes "to hear, discuss, or act upon a matter over which the agency has supervision, control, jurisdiction, or advisory power," § 2-3-202, MCA, "[n]o person shall be deprived of the right . . . to observe the [board's] deliberations," Mont. Const. art. II, § 9. The open-meeting laws include public scrutiny of the deliberative process which, in my view, necessarily includes public scrutiny of the information utilized by board members to make their decisions.

¶35 The constitutional and statutory framework is reasonable and functions well, when it is properly applied. Again, the scenario described above—a gathering of board members at the county rodeo or coffee shop—is not impermissible if "a matter over which the agency has supervision, control, jurisdiction, or advisory power" is not being considered. Section 2-3-202, MCA. But it is impermissible if the public's business (such as school budgets) is being considered by "a quorum of the constituent membership" of the public body (such as a quorum of the School Board) without proper notice and without being open to the public. Sections 2-3-103, -202, -203, MCA. We have held that

> our constitution mandates that the deliberations of public bodies be open, which is more than a simple requirement that only the final voting be done in public. Devices such as not fixing a specific membership of a body, not

18

adopting formal rules, not keeping minutes in violation of § 2-3-212, MCA, and not requiring formal votes, must not be allowed to defeat the constitutional and statutory provisions which require that the public's business be openly conducted.

*Crofts*, ¶ 31. I would add to this list that purporting not to "convene" a quorum of the public agency, Opinion, ¶¶ 19-21, but otherwise satisfying the definition of "meeting" in § 2-3-202, MCA, has the potential to defeat the open-meeting laws and the requirement that the public's business be openly conducted. The Court's approach in this case will enable public bodies to circumvent the open-meeting laws by announcing that they never "convened" a meeting, even though a quorum of the constituent membership was present and discussed matters over which the agency has supervision, control, jurisdiction, or advisory power. The Court's restrictive interpretation of "convening" in § 2-3-202, MCA, is contrary to the legislative mandate that our open-meeting laws be "liberally construed" in favor of openness. Section 2-3-201, MCA; *Crofts*, ¶ 22.

¶36 The Court states that "[p]enalizing those members and the public bodies they serve by an unwarranted application of the statute creates a difficult labyrinth for public servants and threatens to turn any Saturday night at the county rodeo into a board meeting that must be noticed." Opinion, ¶ 20. I question, however, whether a "penalty" is being imposed when the person is not being prohibited from attending the meeting but, rather, is simply being held to the obligations and responsibilities of his or her position as a member of the public body. Significantly, the only exception provided for by the plain language of Article II, Section 9 applies when "the demand of individual privacy clearly exceeds the merits of public disclosure." It thus is difficult for me to accept that our

19

fundamental constitutional principles of open government should yield to a public official's desire to attend, as a "private citizen," a meeting of the public body of which she is a member.[3]

¶37 We have previously held, and it is my view, that the Constitutional Convention Delegates "made a clear and unequivocal decision that government operates most effectively, most reliably, and is most accountable when it is subject to public scrutiny." *Day*, ¶ 34. Our open-meeting laws exist to implement accountability of government to the public. This fundamental principle of our State's constitutional law, and the existence of a clear statutory framework to protect this principle, serves as the basis for this Dissent. Although we may be urged and encouraged at times to manipulate an exception into the "clear and unequivocal" language of our open-meeting laws—such as to find that a quorum was not "convened"—I fear that such exceptions will dilute the strength of our commitment to open government. "While on any given occasion there may be legitimate arguments for handling government operations privately, the delegates to our Constitutional Convention concluded that in the long-term those fleeting considerations are outweighed by the dangers of a government beyond public scrutiny." *Day*, ¶ 35. In my view, our decision today blurs these constructs and ignores a "clear and unequivocal" constitutional and statutory framework for applying our open-meeting laws. "All that is required is that a quorum of the membership convene[s] to conduct its public business." *Crofts*, ¶ 30. Our fundamental constitutional right to open meetings of our public bodies

---

[3] Article II, Section 9 is contained in the Montana Constitution's Declaration of Rights and is, therefore, a fundamental right. *State v. Tapson*, 2001 MT 292, ¶ 15, 307 Mont. 428, 41 P.3d 305.

20

should not be made to depend on any particular interpretation that a member of a public body places on his or her role and degree of participation when a quorum of the public body has assembled and discussed agency matters.

¶38    Based on the undisputed material facts, I would hold that Lewis's attendance and participation at the July 13, 2012 Budget Subcommittee meeting rendered it a meeting of the full School Board, regardless of whether Lewis claims she was attending the meeting as a private citizen, and that the meeting did not comply with Montana's open-meeting laws.  To the extent the Court holds otherwise, I strongly disagree.

¶39    I dissent.

/S/ LAURIE McKINNON

21