FILED

04/22/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0260

DA 24-0260

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 76

CHOTEAU ACANTHA PUBLISHING, INC.
and MONTANA FREE PRESS,

       Petitioners and Appellees,

   v.

GREG GIANFORTE, in his official capacity as
GOVERNOR OF THE STATE OF MONTANA; and
JENNIFER STUTZ, Chair of the Governor's Advisory
Council for the Ninth Judicial District Vacancy,

       Respondents and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADV-2023-245
Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Dale Schowengerdt, Timothy Longfield, Landmark Law, PLLC,
          Helena, Montana

          Anita Milanovich, General Counsel, Office of the Governor, Helena,
          Montana

      For Appellees:

          Peter Michael Meloy, Meloy Law Firm, Helena, Montana

                    Submitted on Briefs:  December 18, 2024

                            Decided:  April 22, 2025

Filed:

                    _____
                                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Greg Gianforte, in his capacity as Governor of the State of Montana, and Jennifer Stutz, Chair of the Governor's Advisory Council for the Ninth Judicial District Vacancy (Respondents), appeal from the District Court's order granting judgment on the pleadings in favor of Choteau Acantha Publishing and Montana Free Press (Petitioners), who claimed the closure of the Advisory Council's meeting with judicial applicants violated the law governing open meetings. We address the following issue:

> *Did the District Court err by determining the Chair of the Ninth Judicial District Advisory Council improperly closed interviews of judicial applicants and subsequent deliberations from the public?*

¶2 For the reasons set forth herein, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On January 6, 2023, then Montana Supreme Court Chief Justice, Mike McGrath, notified Respondent Governor Gianforte of an impending judicial vacancy in Montana's Ninth Judicial District. Pursuant thereto, Governor Gianforte invited nominations for the position and applications from attorneys in good standing who met the qualifications required to serve as a district court judge. *See* §§ 3-1-901(1), -902, MCA. The application period for the position closed on February 13, 2023. Governor Gianforte appointed an Advisory Council to assist the appointment process by reviewing applications, interviewing applicants, and making a recommendation, pursuant to § 2-15-122, MCA. The membership of the Advisory Council included attorneys and community leaders from the counties comprising the Ninth Judicial District, including Glacier, Pondera, Teton, and

2

Toole, with Respondent Stutz, a Teton Deputy County Attorney, serving as the Chair of the Advisory Council.

¶4 The Advisory Council convened on March 23, 2023, in the Pondera County courthouse in Conrad, to interview two applicants, Daniel Guzynski (Guzynski) and Gregory Bonilla (Bonilla) for the position. As Respondents' briefing explains, the Governor's office provided Advisory Council members a printed list of "Potential General Questions" to ask the applicants, "but members [were] not limited to those questions during applicant interviews," and Advisory Council members were encouraged to ask "any questions they believe are appropriate." The printed questions included: "Why do you want to serve as a district court judge?"; "What are some areas of law where you do not have much experience, and how will you get up to speed in these matters?"; "What practices would you use for time and caseload management?"; "What guidelines would you follow in deciding a case of first impression that has no prior precedent?"; and "What plans do you have to run a successful election?" Representatives of Petitioners also attended the meeting.[1]

¶5 After discussion of several preliminary matters by the Advisory Council, and prior to commencement of the interviews, Guzynski and Bonilla both affirmed that their answers to questions would implicate constitutionally protected privacy interests, and they asserted their respective privacy rights. Over Petitioners' objections, Chair Stutz closed the meeting to the public, including for the duration of the interviews and for the subsequent

---

[1] After the meeting, a representative of Petitioners obtained a copy of the printed list of Potential General Questions.

3

deliberations. Only the public comment portion of the meeting was open to the public. The Advisory Council ultimately recommended both applicants to Governor Gianforte, and provided a ranked order, with Guzynski receiving nine first-pick votes and Bonilla receiving one. Governor Gianforte appointed Bonilla.

¶6 On April 12, 2023, Petitioners initiated this proceeding, seeking a ruling from the District Court declaring:

1. That advisory councils are "public bodies under Montana's open meetings and participation laws";

2. That, since the Advisory Council's interviews did not implicate the applicants' privacy rights, "there was no lawful basis for closing the meeting";

3. That applicants for a judgeship do not have a reasonable expectation of privacy during interviews because discussion "pertained to an elected office, and the demands of individual privacy could not exceed the merits of public disclosure"; and

4. That "even if reasonable expectations of privacy existed," any meeting of an advisory council "may only be closed during a discussion of such issues and must be open to the public for the remaining time."

Petitioners also requested the District Court void any actions taken during the Advisory Council meeting.

¶7 Respondents moved to dismiss the proceeding on several grounds, arguing, *inter alia*, that the requested relief was inappropriate because it required the District Court to predetermine whether individual privacy interests may outweigh the public's right to know

4

in relation to judicial applicants without permitting the balancing of those interests on a case-by-case basis. The District Court denied dismissal on this ground, reasoning that "it is possible to grant relief which does not interfere with the established balancing test," because "if no reasonable expectation of privacy exists in relation to a judicial candidates' qualifications, there is no individual privacy interest to balance." Respondents also sought dismissal of Petitioners' request to void the Advisory Council's actions because its only role was to make a recommendation that the Governor was free to accept or ignore. The District Court granted dismissal of the voidness claim on this ground, reasoning that, while the court had authority to void an action taken in violation of open meeting law, here the Advisory Council's recommendation had no legal effect, and therefore there could be "no practical reason" for voiding it.[2]

¶8      The District Court then entered judgment on the pleadings, stating that whether a judicial applicant has a reasonable expectation of privacy over matters related to his or her qualifications for the position is a "question of law." Addressing the competing interests of the public's right to know and asserted privacy rights at issue, the District Court reasoned: "[i]n putting themselves forward to be considered for a public official position, the candidates knowingly and willingly subject themselves to public scrutiny. Thus, there can be no reasonable expectation of privacy for judicial candidates in relation to their ability to perform public duties." Further, the District Court concluded that Stutz's decision

---

[2] Petitioners do not cross appeal the District Court's dismissal of this claim.

to close the entirety of the Advisory Council's meeting violated § 2-3-203(3), MCA, stating:

> The duration a public meeting may be closed is limited to the time the governmental body is discussing individual privacy matters. Here, Stutz preemptively closed the meeting for the entire interview and deliberation portions. . . . [B]ecause she did not identify a specific individual privacy interest before acting it is impossible for her to have actually performed the requisite balancing test.

¶9 Respondents appeal.

## STANDARD OF REVIEW

¶10 Any party may move for judgment on the pleadings "[a]fter the pleadings are closed—early enough not to delay trial." M. R. Civ. P. 12(c). The party seeking judgment on the pleadings "must establish that no issues of fact exist and that it is entitled to judgment as a matter of law." *Conway v. Benefis Health Sys.*, 2013 MT 73, ¶ 20, 369 Mont. 309, 297 P.3d 1200. Judgment on the pleadings is, therefore, appropriate where all material allegations of fact are uncontroverted and only questions of law remain. This Court reviews a district court's ruling on a motion for judgment on the pleadings for correctness. *Firelight Meadows, LLC v. 3 Rivers Tele. Coop., Inc.*, 2008 MT 202, ¶ 12, 344 Mont. 117, 186 P.3d 869; *Associated Press v. Usher*, 2022 MT 24, ¶ 9, 407 Mont. 290, 503 P.3d 1086. "'We will not reverse the District Court when it reaches the right result, even if for the wrong reason.'" *Hubbell v. Gull SCUBA Ctr., LLC*, 2024 MT 247, ¶ 24, 418 Mont. 399, 558 P.3d 1094 (quoting *Palmer v. Bahm*, 2006 MT 29, ¶ 20, 331 Mont. 105, 128 P.3d 1031).

6

¶11    In 2021, the Montana Legislature passed Senate Bill 140, which vested in the governor the authority to directly appoint qualified applicants to the bench. *See* 2021 Mont. Laws ch. 62, §§ 1-13 (repealing code sections providing for the judicial nomination commission and establishing direct appointment of judges and justices); *see also Brown v. Gianforte*, 2021 MT 149, ¶ 1, 404 Mont. 269, 488 P.3d 548.  The governor has general authority to establish advisory councils.  *See* § 2-15-122(1)(a), MCA.[3]  Advisory councils act only in an "advisory capacity," which means "furnishing advice, gathering information, and making recommendations."  Sections 2-15-102(1), 2-15-122(4), MCA.  Neither party disputes that the Advisory Council at issue here was properly created by Governor Gianforte pursuant to § 2-15-122, MCA.

¶12    Before the District Court, Petitioners sought a declaration that advisory councils are public bodies subject to open meeting laws.  That issue is not directly challenged here by Respondents, and thus we need not analyze it under factors we have adopted for doing so. *See Associated Press v. Crofts*, 2004 MT 120, ¶ 22, 321 Mont. 193, 89 P.3d 971.  Although not analyzing the factors, we note that, generally, a "public or governmental body" is "a group of individuals organized for a governmental or public purpose."  *Willems v. State*, 2014 MT 82, ¶ 16, 374 Mont. 343, 325 P.3d 1204 (citing *Bryan v. Yellowstone Cty. Elem. Sch. Dist. No. 2*, 2002 MT 264, ¶ 25, 312 Mont. 257, 60 P.3d 381); § 2-3-201, MCA.  We have previously held that bodies not specifically contemplated within statute may

_____

[3] The 2021 version of the Code is applicable to this matter, and citations herein are to that version, unless otherwise noted.

nonetheless constitute public bodies when their meetings serve an undeniably public purpose. *Crofts*, ¶ 19. Although a university policy committee was not formally created by a government entity to accomplish a specific function, we recognized the committee as a public body, reasoning that because the committee addressed such issues as legislative strategy, budget planning and use of interest income, information technology policies, pre-admission course requirements, and transfer of course credits, that "[c]learly, the Policy Committee met to deliberate on matters of substance." *Crofts*, ¶¶ 27-28. Similarly, we determined that a committee whose purpose was to recommend a list of persons to the governor for selection of the Commissioner of Political Practices was not a board, bureau, commission, or agency within the meaning of those terms as used in the open meeting law, but still constituted a "public or governmental body" under the plain meaning of those terms because of its clear public and governmental purpose. *Common Cause of Mont. v. Statutory Comm. to Nominate Candidates for Comm'r of Pol. Practices*, 263 Mont. 324, 330, 868 P.2d 604, 608 (1994). We found that a school district advisory group acted as a public body when it provided recommendation on the closure of schools because it performed a "legislatively designated governmental function . . . [that] served a clear public and governmental purpose." *Bryan*, ¶ 26. Given this authority and in the absence of a challenge by Respondents, we assume for purposes of the remaining analysis that the Advisory Council here was acting as a public body and subject to state open meeting laws.

¶13 The requirement of open meetings can conflict with individual privacy rights and require a balancing of those interests. "Montana's constitutional right to know is not absolute. Public disclosure is not required in cases where the demand for individual

8

privacy clearly exceeds the public's right to know." *Yellowstone Cty. v. Billings Gazette*, 2006 MT 218, ¶ 19, 333 Mont. 390, 143 P.3d 135 (internal citations omitted). Accordingly, § 2-3-203(3), MCA, provides the procedure for the closure of an otherwise open meeting in consideration of these competing interests:

> The presiding officer of any meeting may close the meeting during the time the discussion relates to a matter of individual privacy and then if and only if the presiding officer determines that the demands of individual privacy clearly exceed the merits of public disclosure.

¶14 This statute authorizes the presiding officer of a public body to close a meeting, but subject to statutory parameters. First, the presiding officer must determine, in real time, whether closure of the meeting is proper based on information then available about the substance of the meeting. While the initial decision to close a meeting does not necessarily require the presiding officer perform the formal legal analysis and balancing of interests required of reviewing courts, the law requires something more than cursory reference to privacy rights and mere recitation of applicable constitutional or statutory language. *See Raap v. Bd. of Tr.*, 2018 MT 58, ¶¶ 14-15, 391 Mont. 12, 414 P.3d 788 ("[a]t the time of closure, the burden is on the public body or agency to articulate a rationale for closure that is sufficiently descriptive to afford reasonable notice to the public of the legal and factual basis for closure without disclosing private information"). Second, closure of the meeting must be limited to "the time the discussion relates to a matter of individual privacy." Section 2-3-203(3), MCA.

¶15 Respondents' appellate arguments focus primarily on the District Court's reasoning regarding the balancing, or the need for balancing, the competing interests, arguing the

9

District Court erred by "issu[ing] a sweeping categorical ruling" to the effect that applicants for appointment to judicial vacancies have no reasonable expectation of privacy in relation to their ability to perform public duties. Citing this Court's approval of the closure of university president performance evaluations in *Missoulian v. Bd. of Regents*, 207 Mont. 513, 675 P.2d 962 (1984), Respondents contend the applicants here "did not lose their expectation of privacy simply by applying for a judicial position any more than University presidents lost their expectation of privacy in relation to their ability to perform their duties" and that "[t]here is no support for the District Court's conclusion that simply by applying to be a judge, these citizens automatically lost their constitutional privacy rights on any matter that could conceivably relate to their ability to serve as judges." In response, Petitioners argue that applicants for judicial office avail themselves of public scrutiny and, at the very least, have a lowered expectation of privacy that did not exceed the public's right to know in this instance.[4]

¶16    We believe it is unnecessary to analyze the constitutional interests asserted here, and their balancing, as this case can be resolved on statutory grounds and upon the pleadings filed before the District Court. "[C]ourts should avoid constitutional issues whenever possible." *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 62, 338 Mont. 259, 165 P.3d 1079. Chair Stutz closed the Advisory Council meeting at the

---

[4] "This Court applies a two-part test to determine whether a person has a constitutionally protected privacy interest: whether the person involved had a subjective or actual expectation of privacy and whether society is willing to recognize that expectation as reasonable." *Missoulian*, 207 Mont. at 522, 675 P.2d at 967 (citing *Mont. Hum. Rights Div. v. Billings*, 199 Mont. 434, 442, 649 P.2d 1283, 1287 (1982)).

beginning of the meeting, before any discussions about the applicants' qualifications commenced. The meeting remained closed for the duration of the applicant interviews and the subsequent Advisory Council deliberations. It was reopened only for public comment. Despite it being apparent from the manner in which the meeting was organized by the Governor's Office that areas of inquiry of the applicants would include general questions designed to elicit answers regarding the applicants' qualifications and interest in serving as a district court judge, such as "What are some areas of law where you do not have much experience, and how will you get up to speed in these matters?", the interviews and deliberation portions of the meeting were closed entirely, in violation of § 2-3-203(3), MCA ("The presiding officer of any meeting may close the meeting *during the time the discussion relates to a matter of individual privacy* and then if and only if *the presiding officer determines* that the demands of individual privacy clearly exceed the merits of public disclosure.") (Emphasis added.) Rather than allowing a general discussion to proceed publicly until an issue implicating individual privacy arose, and then "articulat[ing] a rationale for closure that is sufficiently descriptive to afford reasonable notice to the public of the legal and factual basis for closure without disclosing private information," *Rapp*, ¶ 14, the Chair relied solely on the applicants' assertions of their privacy rights to preemptively close the meeting at its beginning, thereby closing the substantive portions of the meeting in their entirety. The decision to close the meeting in this manner was thus overbroad and in violation of the procedure provided in § 2-3-203, MCA, which the District Court also concluded in addition to its constitutional analysis. Montana's open meeting laws are "liberally interpreted in favor of openness." *Crofts*, ¶ 22.

11

¶17    Likening the applicants' interviews to the performance evaluations of university presidents that were closed in *Missoulian*, Respondents argue the Chair had no way of anticipating whether or when private information might be divulged and, further, that discovery should have been permitted in this litigation to determine exactly what the Chair stated at the meeting and the reasons for closure.

¶18    However, drawing from the uncontested contentions as stated in the pleadings, the meeting here and the meeting in *Missoulian* were significantly different.[5]  The meeting in *Missoulian* discussed performance evaluations of university presidents, which had been confidentially prepared following a comprehensive review process involving interviews of faculty, staff, students, administration, alumni, community leaders and elected officials by the Commissioner of Higher Education concerning various aspects of each president's performance.  *Missoulian*, 207 Mont. at 516, 675 P.2d at 964.  During the month between the Commissioner's interviews and the Board's meeting, the privacy implications were assessed for the purposes of determining whether to permit the press to observe the performance evaluations.  *Missoulian*, 207 Mont. at 517, 675 P.2d at 964-65.  The Chair's decision to close that meeting was, therefore, correctly made "during the time the discussion relate[d] to a matter of individual privacy," § 2-3-203(3), MCA, because the record demonstrated that "[t]here was so much interweaving of sensitive material that it would have been impossible by use of agenda scheduling to separate private matter from

---

[5] The procedural steps taken by the Advisory Council in notifying the public of its meeting, providing opening remarks, and closing the meeting prior to substantive discussions are uncontested.

non-private," and compartmentalizing the evaluations would have likely "destroy[ed] the effectiveness of the evaluations." *Missoulian*, 207 Mont. at 535, 675 P.2d at 974. No such identification of individual interests and assessment of the material to be discussed in the meeting, as in *Missoulian,* is asserted to have been made here; rather, only a preemptive, blanket closure was utilized.

¶19 Because we conclude that the statute governing the open meeting procedure was violated, we affirm the District Court's determination that the Advisory Council's meeting was subject to the open meeting laws and that a blanket closure was improper. The District Court likewise concluded the statute had been violated, and we need not reach the District Court's constitutionally-based holding that there is "no reasonable expectation of privacy in relation to a judicial candidates' qualifications" such that "there is no individual privacy interest to balance," and these conclusions do not necessitate reversal. We affirm on sole, narrower grounds that do not require a constitutional analysis. *See Hubbell*, ¶ 24 ("We will not reverse the District Court when it reaches the right result, even if for the wrong reason."). As it was not appealed, the District Court's dismissal of Petitioners' claim to void the actions of the Advisory Council is also affirmed.

¶20 Affirmed.

/S/ JIM RICE

We Concur:

/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON